1

2

3

4

5

6 ALISA BRODKOWITZ, WSBA #31749
Friedman | Rubin PLLP
7 1109 1st Avenue, Suite 501
Seattle, WA  98101
8 Tel: 206-501-4446; Fax: 206-623-0794
alisa@friedmanrubin.com

9

*Local Counsel for Plaintiff*
10

CHARLES D. SWIFT, WSBA #41671
11 CHRISTINA A. JUMP, TX State Bar #00795828 (*Pro Hac Vice* pending)
Constitutional Law Center for Muslims in America
12 833 E. Arapaho Rd., Ste. 102
Richardson, TX 75081
13 Tel: 972-914-2507; Fax: 972-692-745
cswift@clcma.org
14 cjump@clcma.org

15 *Attorneys for Plaintiff*

16                    **IN THE UNITED STATES DISTRICT COURT**
                 **FOR THE WESTERN DISTRICT OF WASHINGTON**
17                           **SEATTLE DIVISION**

18 **LASSANA MAGASSA,**                    )        CIVIL CASE NO: _____
                    *Plaintiff,*          )
19                                          )
                                            )
20 vs.                                      )        **PLAINTIFF'S ORIGINAL**
                                            )        **COMPLAINT FOR**
21 **CHAD WOLF**, in his official capacity  )        **DECLARTORY RELIEF,**
   as Acting Secretary of the              )        **INJUNCTIVE RELIEF, AND**
22 Department of Homeland Security;         )        **DAMAGES**

23

24

Plaintiff's Complaint, Page 1                    Constitutional Law Center for Muslims in America
                                                     833 E. Arapaho Rd, Ste. 102, Richardson, TX
                                                              Telephone: (972) 914-2507

**DAVID PEKOSKE**, in his official capacity )
as Administrator of the Transportation      )
Security Administration**; MARK**             )
**MORGAN**, in his official capacity as acting)
Commissioner of U.S. Customs and Border  )
Protection; **WILLIAM BARR**, in his          )
official capacity as Attorney General of the  )
United States; **CHRISTOPHER WRAY**        )
in his official capacity as Director of the     )
Federal Bureau of Investigation;               )
**CHARLES KABLE**, in his official capacity)
as Director of the Terrorist Screening         )
Center; and **MINH TRUONG**, in his         )
individual capacity,                                    )
     *Defendants*.                      )
           )

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES

## I.  INTRODUCTION

Plaintiff Lassana Magassa, by and through undersigned counsel, files this Complaint against

Defendants Chad Wolf, David Pekoske, Mark Morgan, William Barr, Christopher Wray, and

Charles Kable (sometimes collectively referred to as the "official capacity Defendants" herein),

as well as individual capacity Defendant Minh Truong. As set forth in additional detail herein,

Plaintiff brings this suit primarily to challenge the sufficiency of regulations promulgated by the

Transportation Security Administration (hereinafter "TSA"), known as the "Security Threat

Assessment and Redress Process For Holders of Airport-Approved and/or Airport-Issued

Personnel Identification Media" (hereinafter "STA Redress Process"), which apply to

administrative challenges for airport credential revocations or denials that result from a

determination that an individual is a security threat. Those security threat determinations and the

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

related administrative remedies which applicants must exhaust lack adequate due process protections for those seeking, or previously in possession of, airport worker credentials. Plaintiff now seeks declaratory judgment, injunctive relief, and damages, including but not limited to lost wages, against the Defendants based on violations of the Fifth Amendment of the United States Constitution, due to the failure to afford Plaintiff his procedural and substantive due process rights; violations of the Administrative Procedure Act (hereinafter "APA") and its requirements; and a violation of Plaintiff's contractual rights under 42 U.S.C. § 1981 by Defendant Truong. This Complaint is supported by the following factual background and claims for relief:

## II.   PARTIES

1.   Plaintiff Lassana Magassa is an African-American, Muslim U.S. citizen and resident of Seattle, Washington, where he was formerly employed by Delta Air Lines, Inc. ("Delta") from June 2015 to October 2016, until the Defendants' unconstitutional actions constructively discharged Plaintiff from his employment, and created an undue burden on Plaintiff's protected liberty and property interests.

2.   Defendant Chad Wolf is the Acting Secretary of the Department of Homeland Security (hereinafter "DHS"). DHS oversees several component agencies, including the TSA and U.S. Customs and Border Protection (hereinafter "CBP"). Defendant Wolf is sued in his official capacity.

3.   Defendant David Pekoske is the Administrator of the TSA. Mr. Pekoske is responsible for security operations at nearly 450 airports throughout the United States and shared security for highways, railroads, ports, mass transit systems and pipelines. Mr. Pekoske oversees the TSA's

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

STA Redress Process, which are at issue in this matter. Defendant Pekoske is sued in his official capacity.

4.   Defendant Mark Morgan is the Acting Commissioner of CBP. CBP is a border entity and one of the world's largest law enforcement organizations. Defendant Morgan is sued in his official capacity.

5.   Defendant William Barr is the Attorney General of the United States. The Attorney General leads the Department of Justice (hereinafter "DOJ"), which oversees the Federal Bureau of Investigation (hereinafter "FBI"). Defendant Barr is sued in his official capacity.

6.   Defendant Christopher Wray is the Director of the FBI. The FBI oversees the Terrorist Screening Center (hereinafter "TSC"). Defendant Wray is sued in his official capacity.

7.   Defendant Charles Kable is the Director of the TSC, which is a multi-agency center administered by the FBI.   The TSC develops and maintains the federal government's consolidated Terrorist Screening Center Database (hereinafter "TSDB"), which contains the watch lists agencies, including but not limited to the TSA, contribute information to and otherwise utilize. Defendant Kable is sued in his official capacity.

8.   Defendant Minh Truong is a Special Agent at the FBI. Upon information and belief, Plaintiff's declination of an offer to serve as an informant and delay in meeting Defendant Truong resulted in the revocation of Plaintiff's workers' credential, other than what can only be presumed to be Plaintiff's religion and national origin. This revocation directly interfered with Plaintiff's employment contract with Delta, and further resulted in the constructive discharge of Plaintiff from his position at Delta. Defendant Truong is sued in his individual capacity.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

### III.   JURISDICTION AND VENUE

9.      This is a civil action authorized by the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act, and 42 U.S.C. § 1981, and is therefore appropriately brought in this Court, under 28 U.S.C. § 1331.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, 49 U.S.C. § 46110, and Fed. R. Civ. P. 57.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1), because there are claims against the United States, and Plaintiff resides in this District, where the acts in question took place.

### IV.      STATEMENT OF FACTS

**A.   Plaintiff's Biographical Background**

12.     Plaintiff hereby incorporates by reference all numbered paragraphs set forth above.

13.     Plaintiff is an African-American United States citizen of Muslim faith.

14.     Plaintiff was born in Harlem, New York and currently resides in Seattle, Washington.

15.     Plaintiff is pursuing a PhD at the University of Washington Information School, and is currently synthesizing data for his dissertation.

16.     Plaintiff has no criminal history or mental health concerns.

**B.   Plaintiff Joins Delta**

17.     Plaintiff hereby incorporates by reference all numbered paragraphs set forth above.

18.     Plaintiff started working for Delta in June 2015 as a Cargo Customer Service Agent in Seattle, in order to provide for his family.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

19.    That same month, Mr. Magassa underwent extensive background checks and an interview by a CBP officer in Seattle in order to be hired for the service/ ramp agent role.

20.    During the interview with the interviewing CBP agent he expressed interest in working in law enforcement, including for the FBI.

21.    After discussing Plaintiff's religious beliefs and desires to work in law enforcement, the CBP agent interviewing Plaintiff for the Delta position offered to pass along his résumé to any law enforcement colleagues, and he agreed.

22.    Plaintiff subsequently received clearance indicating that he was *not* a threat to national security, to transportation security, or a threat of terrorism, in or about June 2015.

23.    Plaintiff began working for Delta on June 22, 2015.

**C.    Agent Truong's Contact with Plaintiff**

24.    Plaintiff hereby incorporates by reference all numbered paragraphs set forth above.

25.    CBP official Tad Foy contacted Plaintiff for an interview in or around October 2015.

26.    Plaintiff met with Foy at SeaTac Airport and once again expressed interest in working in law enforcement and expanding his network.

27.    Foy told Plaintiff he would pass along Plaintiff's information and résumé and someone would contact him soon after.

28.    Foy connected Plaintiff with FBI Special Agent Minh Truong via email correspondence.

29.    Defendant Truong contacted Plaintiff in late October 2015 for what Plaintiff believed, at the time, to be a job interview.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

30. However, when Plaintiff and Defendant Truong met for coffee, Truong questioned Plaintiff on his Muslim faith and his views on violence. Truong then asked Plaintiff to become an informant for the FBI, and mentioned that he could be compensated for doing so.

31. Plaintiff refused, stating that the duplicity of that role was against his core and religious beliefs, but that he remained interested in employment as an agent or intern with the FBI.

32. Plaintiff also stated that if he were to agree to such a role, it would imply that Plaintiff surrounds himself with bad people, which he did not.

33. Plaintiff further stated that whenever he sees something wrong he always calls 9-1-1.

34. On June 26, 2016, Plaintiff was approved for CBP Global Entry program membership.

35. The same FBI agent, Defendant Truong, attempted to make contact with Plaintiff again in September 2016, but they did not connect.

36. Upon information and belief, Plaintiff's declination of Defendant Truong's offers to serve as an informant, and Plaintiff's inability to meet with Truong in September 2016, led in whole or in part to Plaintiff's airport workers' credential being revoked.

37. Upon information and belief, Plaintiff's declination of Defendant Truong's offers to serve as an informant, and Plaintiff's inability to meet with Truong in September 2016, led in whole or in part to his inclusion in the TSDB.

38. Defendant Truong came to visit Plaintiff at his residence in November 2016, shortly after his travel issues began, though Plaintiff was not home. However, Agent Truong represented to Plaintiff's wife that he and Plaintiff were "good friends" so Plaintiff's wife called Plaintiff with Agent Truong present.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

39.     Agent Truong stated he wanted to meet in person that same day.  Plaintiff stated he was unavailable, and would call Agent Truong back later.  Shortly thereafter, Plaintiff obtained legal representation.

40.     Once Plaintiff obtained legal representation, Plaintiff's "good friend" Agent Truong stopped contacting him.

41.     The only remaining impression Plaintiff is left with is that he was targeted due to his religion and/or national origin, as Muslims and minorities make up the majority of those placed on watch lists maintained by Defendants.

**D.     Events Preceding SIDA Badge Revocation**

42.     Plaintiff hereby incorporates by reference all numbered paragraphs set forth above.

43.     On October 3, 2016, Plaintiff traveled (on standby as a Delta employee) from Seattle, Washington (SEA airport) to Paris, France (CDG airport), and then to Berlin, Germany (TXL airport).  His outgoing travel was without issue.

44.     While in Berlin, Plaintiff attended the annual conference of the Association of Internet Researchers.

45.     The conference ended Saturday, October 8, 2016, and two days later Plaintiff flew from Berlin to Paris.  This travel was again without issue.

46.     When Plaintiff arrived back in Paris and tried to check in for his return flight to Seattle, he received an error message.

47.     Plaintiff went to the Delta ticket counter, where for an hour and a half he was told to wait, but that no one was sure why he wasn't able to receive a boarding pass.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

48.     Having missed his original flight, Plaintiff was re-booked on a flight to Cincinnati, Ohio (CVG airport).  At the gate for the flight to Cincinnati, a loud siren and alarm sounded when his boarding pass was scanned.

49.     Security approached and searched Plaintiff and his belongings, despite him having already been extensively searched at the security checkpoint prior to reaching the gate.

50.     Security confiscated small crochet scissors (within TSA guidelines to carry on board) and allowed Plaintiff to board the flight without further explanation.

51.     On or around October 7, 2016, once in Cincinnati, Plaintiff attempted to check in via the Global Entry kiosk to expedite the process of reentering the United States. At this time, Plaintiff received an error message that his privileges were revoked, and Plaintiff had therefore lost his membership.

52.     After being detained and interviewed for three hours in Cincinnati, government agents and airport officials told Plaintiff they could not identify any reason he was triggering alerts.

53.     Airline ticketing counter personnel then booked Plaintiff from Cincinnati to Minneapolis, Minnesota (MSP airport) to Seattle.  Doing so required special approval.

54.     Plaintiff attempted to go through security, with only fifteen minutes before his newly scheduled departure, but again set off alarms and sirens. After a 20-minute search he was cleared, but had missed his flight.

55.     Plaintiff was rebooked from Cincinnati to Salt Lake City, Utah (SLC airport) to Seattle, leaving the next morning.  He slept at the airport, but was instructed that he had to exit the secure area of the airport and go back through TSA security again.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

56. Similar to when he attempted to board his flights in both Cincinnati and Salt Lake City, Plaintiff set off alarms and had additional screening. His boarding passes for both flights were marked SSSS.

57. Upon information and belief, Plaintiff's experiences traveling during this time period were consistent with persons on the Terrorist Watch List, or in other words, with persons named in the TSDB, maintained by the TSC.

58. After Plaintiff finally returned to Seattle from travels to Berlin in Paris, on or about October 10, 2016, his Delta Air Lines Cargo supervisor, the Head of Corporate Security for Delta Air Lines, and a Police Officer at the Seattle airport met him at the gate. At this time, they informed Plaintiff that his TSA status changed and his credentials were therefore revoked.

59. Due to the TSA's change in his status, Delta stated it had no choice but to prevent Plaintiff from returning to work, as his workers' credential, which is required by federal law to work in any U.S. airport, required immediate revocation.

60. The airport officials also stated that they had no further information to provide and no other option but to suspend Plaintiff and escort him from the premises.

61. As Plaintiff has never been arrested or committed any act that would create concern for national security, and since the TSA never communicated the reasons as to this change, Plaintiff, to this day, has no plausible explanation for the TSA's October 2016 change in status.

62. In a letter dated October 8, 2016, which Plaintiff received days later than written once back in Seattle, the Port of Seattle Aviation Security notified Plaintiff that his Security Identification Display Area ("SIDA") workers' identification badge was revoked, as "all

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

persons holding an identification badge issued for any U.S. airport operating under Title 49 CFR 1542, must have a 'passed' status in order for a badge to be issued."

63.    The next day, as requested by Delta, Plaintiff cleared out his locker, and was again told no one knew why his TSA status changed.

64.    In an effort to remain marketable for future jobs, knowing termination was inevitable and shortly to follow, Plaintiff submitted a letter of resignation on October 12, 2016, completely unaware of the reasons he was suddenly seen as a security threat.

65.    Plaintiff's constructive discharge from Delta became effective as of October 26, 2016.

66.    Plaintiff never experienced disciplinary problems during his time at Delta.

67.    In fact, Plaintiff was set to begin a data analyst position with Delta upon his arrival back home from Berlin.

68.    Delta officials have confirmed in writing that they do not know the reasons why Plaintiff's status changed, and that they had no choice but to follow TSA's orders in suspending his airport privileges.

69.    Therefore, the loss of his employment at Delta was directly caused by the change in Plaintiff's TSA status.

**E.    Loss of Airport Privileges Coincided with the Onset of Extreme Travel Difficulties**

70.    Plaintiff hereby incorporates by reference all numbered paragraphs set forth above.

71.    The loss of Plaintiff's airport privileges sparked extreme difficulties for Plaintiff when traveling domestically.

72.    These difficulties included frequently missing flights due to extensive screenings, often right before Plaintiff enters the plane, in addition to numerous screenings beforehand.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

73.    These difficulties also included the sounding of an alarm almost every time Plaintiff's boarding pass was scanned, and his inability to board his scheduled flight.

74.    These actions created a chilling effect on Plaintiff's fundamental right to travel and also resulted in emotional distress and embarrassment.

75.    These difficulties caused Plaintiff to be late for and miss several professional academic events, which further affected his ability to take advantage of future professional opportunities.

76.    During the time Plaintiff was considered a security threat by the TSA, Plaintiff also experienced increasingly severe difficulties when traveling internationally.

77.    On November 25, 2017, while traveling with his five-year-old daughter, Plaintiff was detained at the airport in Paris for several days when he arrived from Seattle. Plaintiff was only told that he was denied entrance into France because his name appeared in a database register for one of the following reasons:

     *i.*   Deportation Order

     *ii.*   Ban on Entry

     *iii.*   Threat to Public Order

78.    Plaintiff's travel-related issues abroad are, upon information and belief, a direct result of communications made by the United States to other countries, including France.

79.    Plaintiff himself has never been provided with *any* information, other than heavily redacted documents that do no more than to identify that Plaintiff was the topic of investigation, to justify the deprivation of his fundamental rights.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

80.     Upon information and belief, Plaintiff was at least previously (if not also currently) prohibited from traveling into European Union member countries, further adding to the chilling effect of Plaintiff's fundamental right to travel.

81.     Recently, even after the conclusion of the administrative process as described more fully below, Plaintiff still experiences extreme difficulties traveling, including being selected for secondary screening.

82.     For instance, on his recent return travel from abroad, Plaintiff's CBP kiosk receipt had a large "X" printed over the printed contents. Subsequently, CBP officials escorted Plaintiff to a separate section for questioning. During this time, he recalls hearing a CBP officer say "TTRT, hard secondary…" into his radio on at least two occasions as he escorted Plaintiff to the CBP holding area. Upon information and belief, this evinces that Plaintiff is likely still on a watch list maintained by the Defendants.

**F.     Relevant Procedural History Prior to Administrative Proceedings**

83.     Plaintiff hereby incorporates by reference all numbered paragraphs set forth above.

84.     On November 4, 2016, Plaintiff received formal notification of TSA's Initial Determination of Eligibility and Immediate Suspension, indicating that he may no longer be eligible to hold airport-approved and/or airport-issued personnel identification media.

85.     On November 13, 2016, Plaintiff requested the release of any and all documentation that TSA relied upon in its determination that he was no longer eligible to hold airport approved and/or airport-issued personnel identification media.

86.     On December 22, 2016, the TSA provided heavily redacted documents to Plaintiff in response to his request for the release of any and all documentation that the TSA relied upon in

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

its determination. The materials included an October 20, 2016 Security Threat Assessment Board (hereinafter "STAB") report.

87.     None of the materials sent on December 22, 2016 contained *any* substantive information as to why Plaintiff's badge and airport privileges were revoked.

88.     For instance, the "Case Summary" and the "Basis of Investigation" sections of the STAB report are *completely* redacted.

89.     The few portions of the documents the TSA provided that were not redacted only identify Plaintiff and provide his contact information, and do nothing to explain why Plaintiff lost his privileges and furthermore, why he experiences such extreme difficulties in traveling.

90.     Plaintiff filed a timely appeal of the Initial Determination of Eligibility and Immediate Suspension on February 10, 2017.

91.     Plaintiff received a Final Determination of Eligibility on June 19, 2017, stating that he is not eligible for airport-approved and/or airport-issued personnel identification media. Plaintiff subsequently filed a timely appeal of the Final Determination.

92.     On July 24, 2017, the Honorable George J. Jordan, a Coast Guard Administrative Law Judge, presided over Plaintiff's administrative appeal described herein.

93.     After being assigned to Plaintiff's matter, Judge Jordan presided over a prehearing conference call with representatives for Plaintiff and the TSA on September 28, 2017.

94.     An Order Memorializing Prehearing Conference was issued on October 5, 2017, which proscribed a bifurcated hearing with the classified and unclassified portions to be scheduled after an *in camera* review of TSA's unclassified summary of the classified information, which TSA stated it could not produce to Plaintiff.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

95. On October 5, 2017, one of Plaintiff's attorneys, Christina A. Jump ("Attorney Jump"), notified Judge Jordan and opposing counsel that, as she previously indicated in the September 2017 prehearing conference call, co-counsel Charles D. Swift ("Attorney Swift") has Secret security clearance.

96. Counsel for Plaintiff subsequently respectfully requested access to all documents relevant to Plaintiff in this matter, to the extent applicable based on Attorney Swift's clearance.

97. On October 20, 2017, TSA's representatives filed a Notice of Introduction of Classified Materials.

98. Plaintiff's representatives followed up on their earlier communications on October 25, 2017, and requested a time and location as to where Attorney Swift could review the materials that were submitted for *in camera* review on October 20, 2017.

99. On January 25, 2018, after his completion of an *in camera* review of the TSA's justification that the Agency could not provide an unclassified summary, Judge Jordan concurred with the TSA's determination that it could not be provided. No statements as to whether Attorney Swift could go review the classified materials in person were made in this Order.

100. In his January 25, 2018 order, Judge Jordan directed the TSA to provide the undersigned with a redacted version of the June 13, 2017 STAB report, which previously was not provided to Plaintiff or his counsel.

101. On January 31, 2018, the TSA filed its Supplement to Releasable Materials, which included the aforementioned June 13, 2017 STAB report. However, this report was only slightly less redacted than its October 20, 2016 counterpart, with the case summary still *completely*

redacted and no information as to what charges are against Plaintiff as to the reasons why his airport privileges were revoked or why he is seen as a security threat.

102.   On March 1, 2018, Plaintiff filed a Motion for Requests for Production of Documents of Things, for Inspection or Other Purposes.

103.   The purpose of motion requesting discovery was to allow Plaintiff a meaningful opportunity to marshal evidence on his behalf.

104.   On March 21, 2018, Plaintiff filed a Motion to Appear at Classified Hearing.

105.   The motion seeking attendance at the classified portion of the bifurcated hearing intended to allow Plaintiff to receive an explanation as to why such actions, which prohibit him from his fundamental right to chosen employment and his fundamental right to travel, were taken against him.

106.   The motion also sought attendance at the classified portion of the bifurcated hearing so that Plaintiff would be able to meaningfully respond to allegations and correct potential errors.

107.   The TSA responded to both motions in March of 2018.

108.   Judge Jordan denied both of Plaintiff's motions due to classified and sensitive information being "inextricably intertwined" with any new information that could be redacted, and thus, apparently, completely un-viewable even by counsel with SECRET security clearance.

109.   These decisions left Plaintiff completely in the dark as to the charges against him, and therefore unable to prepare an adequate defense to rebut such allegations.

110.   After Judge Jordan ruled against allowing any of Plaintiff's counsel to attend the classified portion, Plaintiff's counsel asked Judge Jordan if the classified portion of the hearing

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

could take first, so that the questioning by Judge Jordan of Plaintiff was more informed. This request was also denied.

**G.      Plaintiff's Hearing Before the U.S. Coast Guard**

111.   Plaintiff hereby incorporates by reference all numbered paragraphs set forth above.

112.   On April 24, 2018, Plaintiff and counsel attended the unclassified portion of the bifurcated hearing, which Judge Jordan presided over.

113.   During this proceeding, Judge Jordan addressed Plaintiff directly, and stated that the purpose of the hearing was to enable him to create as complete of a record for an unclassified decision as possible.

114.   Judge Jordan further stated that the Agency holds the burden to prove the revocation is supported by substantial evidence.

115.   Judge Jordan notified counsel on both sides that they may produce proposed findings of fact and conclusions of law pursuant to the applicable redress procedures, which he would consider in making his final decision.

116.   At this time, Plaintiff's counsel stated objections as to submitting proposed findings of fact and conclusions of law, stating they were unable to comply because they have "no idea what the basis for Plaintiff's denial is."

117.   Plaintiff's counsel further stated an objection as to the TSA's unwillingness to separate evidence Plaintiff was entitled to, which reportedly is intertwined among classified evidence, as well as an objection as to allowing the classified portion to occur after the unclassified portion, rather than first, since Plaintiff's counsel was not permitted to attend.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

118.   On direct examination, among what Plaintiff discussed was why traveling is essential for his field of study, as well as his interests in further travel to Europe for academic, professional, and leisure opportunities.

119.   The TSA only directly examined one witness during the unclassified portion of the hearing: Kent Jefferies, the Assistant Supervisory Air Marshal in Charge of the Security Assessments Section in the TSA Office of Law Enforcement/Federal Air Marshal Service.

120.   On direct examination, Jefferies stated that the applicable rules to this proceeding were the TSA's STA Redress Process.

121.   These rules do not allow for any meaningful discovery to occur, nor do they allow for subpoenas to be issued.

122.   The TSA previously stated in its responses to Plaintiff's Motion that the "Rules of Practice, Procedure, and Evidence for Formal Administrative Proceedings of the Coast Guard," which are codified under 33 CFR 20, only apply to proceedings in relation to Mariner credentials, not airport credentials.

123.   However, such rules allow for applicants to move for requests for discovery, subpoenas, and other motions that the STA Redress Process does not authorize.

124.   On cross examination of Jefferies, Plaintiff's counsel asked Jefferies the criteria that determines who constitutes "a threat to transportation or national security," which according to the procedures is a basis for security threat assessment. *See* II. a. of STA Redress Process.

125.   Jefferies merely stated that the criteria is "an evaluation of information available," but he did not know whether there are written criteria as to what would pose a threat.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

126.   Jefferies spoke in uncertain terms about what types of information would lead to the conclusion that someone is a threat under these procedures, including statements such as "*maybe* association with other individuals or unknown acts," and responding "could be" to Plaintiff's counsel questioning whether persons with associations to persons known to be a threat or those with criminal activity would qualify as threats.

127.   Jefferies could not articulate a standard by which threat is determined, and seemingly agreed that if a person had more than a one percent chance of being a threat to transportation security, national security, airline security, passenger security, or civil aviation security, that their identification badges would be suspended.

128.   Jefferies also conceded that it "might be very difficult" to rebut charges against an individual when he does not know the basis for such charges, in the form of a hypothetical Plaintiff's counsel used to illustrate this point.

129.   The classified portion of the bifurcated hearing took place on April 25, 2018, and, as previously stated, Plaintiff and his counsel were prohibited from attending the classified portion altogether.

130.   This hearing is where not only Jefferies, but other witnesses of the agency, testified specifically as to Plaintiff and the basis for their determination, unlike the hearing which Plaintiff was allowed to attend, which did not discuss the basis for the determination specific to him altogether.

131.   On July 20, 2018, TSA counsel submitted Proposed Findings of Fact and Conclusions of Law, and also objected to the filing of the TSA's Classified Proposed Findings of Fact and Conclusions of Law.

132.    Per the regulations, "[t]he record is closed once the certified transcript and all documents and materials have been submitted for the record."[1]

133.    The regulations also state that the ALJ will issue "an unclassified written decision to the applicant no later than 30 days from the close of the record and serves the decision of the parties," and that "[t]he ALJ may issue a classified decision to the TSA."[2]

134.    On October 12, 2018, Plaintiff's attorneys sent minor corrections to Plaintiff's originally submitted Proposed Findings of Fact and Conclusions of Law, which did not change the substance of the legal issues or any key facts, to the ALJ and the TSA's attorneys.

135.    On April 29, 2019, the ALJ issued a ruling, finding that the TSA's June 19, 2017 Final Determination of Eligibility was "supported by substantial evidence contained in the record, is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

136.    The ALJ's decision was issued well beyond 30 days from the closing of the record, which upon information and belief was closed on July 20, 2018.

137.    On May 31, 2019, Plaintiff made a timely request for review of the ALJ's decision by the TSA Final Decision Maker. In this appeal, Plaintiff stated, in part, that

[T]he Unclassified Decision by the Administrative Law Judge fails to meet the standard of being supported by substantial evidence, as required in the TSA's Security Threat Assessment and Redress Process For Holders of Airport Approved and/or Airport-Issued Personnel Identification Media. Specifically, the Unclassified Decision by the Administrative Law Judge refers to arbitrary and capricious as well as abuse of discretion standards. Furthermore, this request is subject to the ongoing objection by Lassana Magassa and his counsel to the fact that neither Mr. Magassa nor any of his counsel was permitted to attend or participate in the Classified hearing regarding his complaint, and further neither Mr. Magassa nor any of his counsel received the Classified Addendum (dated May 7, 2019) issued in this matter and which

---

[1] STA Redress Process, IV(f) at 15.

[2] STA Redress Process, IV(b) at 11.

Plaintiff's Complaint, Page 20

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

the Unclassified Decision (dated April 29, 2019) references and relies upon repeatedly as support for the ruling of the Administrative Law Judge."

138.    The ALJ's unclassified decision was issued well beyond 30 days from the closing of the record, which upon information and belief was closed on July 20, 2018.

139.    On July 1, 2019, the TSA filed its response to Plaintiff's request for review by the Final Decision Maker. This response stated, in part, that "[b]ecause the Administrative Law Judge determined that the TSA's Final Determination of Eligibility was supported by substantial evidence, *id.*, the Administrative Law Judge applied the appropriate standard of review."

140.    This July 1, 2019 Response from the TSA also stated that "[w]ith respect to Mr. Magassa's continuing objection regarding access to the classified hearing and classified addendum, the Administrative Law Judge determined that TSA's withholding of information was in accordance with its procedures and comports with due process given the redress procedures' provisions requiring notice of the revocation of Mr. Magassa's badge, an opportunity for Mr. Magassa to be heard, and an independent *ex parte, in camera* review of the record by the Administrative Law Judge."

141.    On July 26, 2019, the TSA issued a Withdrawal of Final Determination, which was a withdrawal of the TSA's June 19, 2017 Final Determination of Eligibility finding Plaintiff ineligible to hold airport-issued identification media because he posed a security threat.

142.    This Withdrawal of Final Determination of Eligibility was signed by Acting Deputy Administrator Patricia Cogswell, and stated that "[u]pon consideration of all information available to me as of the date of this letter, I have determined that you are eligible to maintain airport-issued identification media."

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

143.   This Withdrawal did not provide any of the reasons supporting the previous finding that Plaintiff was a security threat, which precluded Plaintiff from chosen employment and professional development opportunities, stigmatized him, and infringed on his fundamental right to travel for nearly three years.

144.   Shortly after Plaintiff learned he was eligible to hold a SIDA badge again, Plaintiff obtained employment similar to his previous position at Delta with another airline. This employment is also contingent on holding a SIDA badge and having airport privileges.

145.   Though Plaintiff did ultimately re-obtain a SIDA badge and airport privileges, he lost income and opportunities during the extended time period, of nearly three years, in which he fought the revocation of his identification badge.

146.   This loss of income continues to affect Plaintiff, as he has been denied the opportunity to progress in his employment as he otherwise would have, had he not been prevented from remaining continuously employed.

147.   In addition, and as described above, Plaintiff still experiences travel difficulties as a result of this previous security threat designation.

148.   Plaintiff also continues to be stigmatized and suffer reputational harm due to the prior revocation of his security badge, even at his new employment.

149.   For instance, despite getting permission from fellow Sea-Tac employees to enter the secure area of the airport, only to retrieve his possessions such as including a cell phone charger prior to traveling, contracted airport security called the airport and government officials, stating that Plaintiff intentionally bypassed general screening security procedures prior to heading to the boarding gate for his flight.  This occurred despite Plaintiff clearly exiting the secured area

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

and going through TSA general screening, as would any traveler, before proceeding to his gate. Plaintiff was approached at the gate, accused of violating security, and had his airport badge temporarily revoked and confiscated.  Contracted airport security and TSA personnel initially asserted he had not gone through security, without checking the relevant video to confirm. This incident involved the filing of a police report by the Port of Seattle Police.

150.   Plaintiff was eventually vindicated, as he had done nothing wrong, though not until after much public embarrassment, harassment, and missing his scheduled flight.

151.   Even though the Port of Seattle Police and the TSA found that Plaintiff did not bypass security or do anything improper, this incident evinces the continuing reputational harm Plaintiff suffers in the eyes of colleagues in his chosen field, as well as in public forums.

152.   Plaintiff has filed an administrative claim under the Federal Tort Claims Act (hereinafter "FTCA") seeking damages, which remains pending.

153.   Plaintiff now seeks a ruling that Defendants' regulations and policies, which led to this unjustified and extensive delay, are arbitrary and capricious, and prejudiced Plaintiff by denying him due process of law, as well as damages as appropriate for his injuries.[3]

## V.   CAUSES OF ACTION

### A.   COUNTS ONE & TWO:

#### *VIOLATIONS OF PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT, AGAINST THE OFFICIAL CAPACITY DEFENDANTS*

154.   Plaintiff hereby incorporates by reference all numbered paragraphs set forth above.

---

[3] Plaintiff intends to amend this Complaint at the appropriate time to add claims which will be brought under the FTCA.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

155.   The Fifth Amendment states that "No person shall […] be deprived of life, liberty, or property, without due process of law."

156.   Defendants Wolf, Pekoske, Morgan, Barr, Wray, and Kable deprived Plaintiff of his Fifth Amendment Rights by violating the Due Process Clause of the Fifth Amendment.

157.   Plaintiff properly raises this claim as an interested party, who has been directly and personally affected by the regulations at issue, as he experienced deprivations of various liberty and property interests for the nearly three-year period in which the Defendants found he posed a security threat, without the ability to properly determine or confront the claims against him.

158.   In addition, Plaintiff is currently working in a position that requires this same clearance, which necessitates his request for prospective relief in this regard.  Plaintiff has a reasonable fear of the same thing happening again, since he has never been able to determine why his status was revoked in 2016, and therefore has not had a meaningful opportunity to respond to any such reasons. Plaintiff therefore reasonably fears that his current position may be in jeopardy at any time in the future, should history repeat itself.

*159.*   This fear is reasonably supported by his continued scrutiny traveling, as well as the aforementioned incident where an airport colleague believed Plaintiff bypassed security.

**i.**       ***Count One: Procedural Due Process***

160.   Plaintiff hereby incorporates by reference all numbered paragraphs set forth above.

161.   Defendants Wolf, Pekoske, Morgan, Barr, Wray, and Kable violated Plaintiff's procedural due process rights.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

162.   Procedural due process imposes constraints on governmental decisions depriving individuals of "liberty" or "property" interests, within the meaning of the Due Process Clauses of the Fifth or Fourteenth Amendments.

163.   Workers' identification badges, such as SIDA badges, are among those property interests protected under the Due Process Clause.

164.   Plaintiff, and other similarly situated individuals, have a protected property interest in the issuance or continued possession of a SIDA badge and accompanying U.S. Customs Seal.

165.   The Constitution protects liberty interests, including the right to follow chosen professions free from unreasonable governmental interference.

166.   In fact, restrictions on the freedom to practice chosen professions are among the deprivations the Due Process Clause was designed to protect against.

167.   Under the Due Process Clause, reputational interests are also recognized liberty interests.

168.   The right to travel, both domestically and abroad, is a fundamental liberty interest, as the Supreme Court has recognized that "freedom of movement across frontiers […] may be as close to the heart of the individual as the choice of what he eats, or wears, or reads."[4]

169.   Procedural Due Process violations may occur under the stigma-plus doctrine when government agencies and officials take adverse actions against an individual, and those actions foreclose the individual's ability to pursue his or her chosen profession.

170.   The stigma-plus doctrine also addresses when government action injures an individual's reputation and deprives that individual of rights previously held under state or federal law.

---

[4] *Kent v. Dulles,* 357 U.S. 116, 126 (1958).

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

171.   The actions and communications of the Defendants injured Plaintiff's standing in the community as to airport and airline officials working in Plaintiff's chosen field of employment, as well as members of the public who witnessed these violations, both in 2016 and recently.

172.   These actions and communications by Defendants additionally gave airline officials reason to believe that Plaintiff is dangerous or has, or is suspected of having, ties to terrorism, and cast him in a negative light to the public generally.

173.   Defendants' actions and communications were false because they impute criminal offenses or associations by Plaintiff.

174.   These actions and communications by Defendants also create the erroneous impression that Plaintiff committed or will be charged with a crime.

175.   These actions and communications of Defendants created an alteration of the Plaintiff's right to maintain a workers' identification badge and his historically protected right to engage in his chosen profession. Similar recognized alterations in status include the revocation of driver's licenses and defamation upon termination of employment.

176.   These actions and communications resulted in Plaintiff being prohibited from engaging in his chosen employment for nearly three years, as the SIDA badge is a requirement for his chosen career and jobs like the one he had at Delta.

177.   Defendants' adverse actions directly foreclosed Plaintiff's freedom to engage in his chosen employment for nearly three years.

178.   Defendants' official action in the form of refusing to provide Plaintiff a SIDA badge for nearly three years, without providing Plaintiff a meaningful opportunity to rebut the allegations

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

against him that he is a security risk, created a continuing stigma or disability that precluded Plaintiff's right to work in his chosen profession for nearly three years.

179.   Defendants stigmatized Plaintiff, injured his reputation, affected his standing in the community, deprived Plaintiff of a right previously guaranteed to him, and precluded Plaintiff from working in his chosen field. Therefore, Defendants violated the stigma-plus doctrine.

180.   The fundamental requirement of due process is "the opportunity to be heard 'at a meaningful time *and in a meaningful manner.'*"[5]

181.   Due process requires providing notice of the deprivation in advance, and an opportunity to be heard.

182.   The right to a hearing embraces not only the right to present evidence, but also a meaningful opportunity to know the claims of the opposing party and to refute them.

183.   Without a reasonable opportunity to know the claims of the opposing party, any right to a hearing is considered a barren one.

184.   Allowing parties to proceed in matters without stating clearly the basis for positions divests the proceedings in that matter of a fundamental aspect of fairness, and does not allow the other party to correct even apparent errors.

185.   The government must provide substantive reasons that are sufficient to provide a meaningful response.

186.   The government must provide any material information, exculpatory or inculpatory, in its possession necessary for a meaningful response.

---

[5] *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976) (emphasis added).

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

187.   In addition, the Ninth Circuit has noted that "the most scrupulous observance of due process, including the right to know a charge, to be confronted with the accuser, to cross-examine informers and to produce evidence in one's behalf, is especially necessary where the occasion […] is **_fear_** of future misconduct, rather than crimes committed."[6]

188.   In line with these proclamations, the Ninth Circuit has determined on numerous occasions that the Fifth Amendment Due Process Clause requires an agency to provide an aggrieved person or entity access to classified and unclassified information used to deprive the person or entity of their protected liberty and/or property rights.

189.   To this day, Plaintiff remains wholly unaware of the nature of the TSA's claims against him, and during his administrative challenge was therefore unable to rebut them or otherwise prepare evidence challenging the revocation of his workers' identification badge.

190.   The constitutional issues pertaining to loss of credentials, loss of reputation, and loss of chosen employment, as well as undue hardship in, and the chilling effect on, traveling both domestically and internationally, cannot be responsibly addressed without an informed, fact-based record.

191.   Accordingly, the TSA was at least required to provide Plaintiff a statement of reasons that is sufficient to provide Plaintiff with an opportunity to respond meaningfully. The TSA did not do this.

192.   The TSA is also required to provide material exculpatory or inculpatory information in its possession necessary for Plaintiff to prepare a meaningful response. The TSA did not do this either.

---

[6] _Shaughnessy v. United States_, 345 U.S. 206, 224-27 (1953) (Jackson, J., dissenting)).

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

193.   Such materials "would have significant probative value in ensuring that individuals are not erroneously deprived of their constitutionally-protected liberty interests."[7]

194.   The constitutional duty to provide fair procedures gives citizens the opportunity to prevent deprivations from happening.

195.   Defendants were required to provide Plaintiff any notice of any factors constituting the basis for the suspension, and eventual revocation for nearly three years, of Plaintiff's SIDA badge and airport privileges. They did not.

196.   Defendants, to this day, have not produced *any* information concerning the reasons for the actions taken against Plaintiff, which prevented him from chosen employment and infringed on other fundamental interests for nearly three years.

197.   Defendants did not provide an adequate opportunity for Plaintiff to be heard, either before or after they revoked his workers' identification badge.

198.   Defendants did not allow any counsel for Plaintiff to attend the classified portion of the hearing, where the actual basis for the agency's decision was discussed, even though one of Plaintiff's attorneys, Attorney Swift, holds SECRET security clearance.

199.   Plaintiff relentlessly attempted to acquire *any* information regarding the revocation of this airport privileges. These efforts were to no avail.

200.   Defendants did not supply Plaintiff with any records relating to the loss of his protected interests, other than records redacted to the point of uselessness.

201.   Defendants refused to dissect the information counsel was entitled to from information that was "inexplicably intertwined" with classified information.

---

[7] *Latif v. Holder*, 28 F. Supp. 3d 1134, 1154 (D. Or. 2014).

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

202.   Defendants' actions impeded Plaintiff's ability to receive notice of and the reasons for the loss of his airport privileges and the inability to practice his chosen profession.

203.   This appeal process provides individuals like Plaintiff no adequate redress avenue to contest the deprivation of their liberty interests.

204.   The regulations promulgated by the TSA, under the umbrella of DHS, failed to provide meaningful and sufficient due process to Plaintiff.

205.   The regulations utilized by the TSA prohibit applicants or their counsel from reviewing any classified material or SSI against them, or attending any classified hearings which directly pertain to adjudicating their appeals.

206.   The regulations permit the ALJ to make a decision based on information which is not provided to the SIDA badge applicant, or his counsel.

207.   The regulations permit the ALJ to rely on that undisclosed information, without allowing the applicant a meaningful opportunity to respond or even know the allegations against him.

208.   Applicants such as Plaintiff have a constitutionally protected due process right to observe, evaluate, and contest all information used by the government when revoking SIDA badges and similar airport credentials.

209.   At the very least, these applicants possess a constitutionally protected right to have counsel present to review classified and/or SSI information on their behalf.

210.   At the very least, these applicants possess a constitutionally protected right to have counsel attend classified hearings on their behalf.

211.   Neither Congress nor the President has granted the TSA or DHS the right to vest such broad authority in an ALJ.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

212.   The unclassified hearing, as it lacks any real notice as to the classified and SSI information against Plaintiff, was meaningless for Plaintiff.[8]

213.   Plaintiff, and similarly situated individuals, are entitled to an adequate legal mechanism that affords them adequate notice and a meaningful opportunity to contest the deprivation of constitutionally protected rights.

214.   Plaintiff was entitled to know the charges against him so that he could rebut them and correct errors, as are all individuals similarly situated to Plaintiff.

215.   To this day, Plaintiff remains wholly unaware of the nature of the TSA's claims which deprived him of a SIDA badge and chosen employment for nearly three years.

216.   To this day, Plaintiff remains wholly unaware of the nature of the TSA's claims which resulted in extreme travel difficulties that Plaintiff still experiences, despite the TSA revoking its original Determination of Eligibility.

217.   To this day, Plaintiff remains wholly unaware of the nature of the TSA's claims, which damaged and continue to damage his reputation, and create an atmosphere where Plaintiff is not trusted by colleagues.

218.   Defendants therefore violated Plaintiff's right to procedural due process of law.

***ii.    Count Two: Substantive Due Process***

219.   Plaintiff hereby incorporates by reference all numbered paragraphs set forth above.

---

[8] *Boudin v. Dulles*, 136 F. Supp. 218, 221 (D.D.C. 1955) (finding proceedings challenging a decision by the Board of Passport Appeals improper, when applying preponderance of the evidence as the standard, when "there can be no dispute that confidential information was employed; that files were not revealed; and that evidence contained therein could not be, and was not, subject to cross-examination" because, under such circumstances, "any hearing provided an applicant becomes an empty gesture").

Plaintiff's Complaint, Page 31

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

220. Defendants Wolf, Pekoske, Morgan, Barr, Wray, and Kable deprived Plaintiff of his substantive due process Fifth Amendment rights.

221. The Fifth Amendment has a substantive component that bars certain arbitrary and wrongful government actions regardless of the fairness of procedures used to implement them.

222. Substantive due process provides heightened protection against government interference.

223. It also forbids governmental action that infringes certain fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.

224. As previously set forth in this Complaint, the right to travel, both domestically and abroad, is a fundamental liberty interest.

225. Defendants' actions create an undue burden, and chill Plaintiff's right to travel both internationally and domestically.

226. In addition, the freedom to practice chosen professions without government restraint is a recognized liberty interest.

227. Reputation is recognized as a protected liberty interest.

228. Workers' identification badges, such as SIDA badges, are recognized as protected property interests.

229. The government's actions infringing on such interests must therefore be narrowly tailored to a government objective, or they fail as a matter of law.

230. While national security is a compelling interest, courts are wary of tipping the scales in favor of government employment when the government does not demonstrate the individual involved poses a threat to either foreign relations or national security.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

231.   Merely stating that Plaintiff is a threat, without articulating a basis why, shows Defendants did not meet their burden when they took actions depriving Plaintiff of his protected interests.

232.   Furthermore, Defendants' actions against Plaintiff are not narrowly tailored.

233.   Defendants refused to dissect the information Plaintiff, or at least counsel with security clearance, is entitled to in order to rebut the charges against him, by merely stating the information is "inextricably intertwined" with classified data.

234.   As stated herein, Plaintiff's travel difficulties for over three years now, which started at the time he was knowingly considered a security threat, are consistent with individuals on watch lists created and maintained by Defendants.

235.   Upon information and belief, the TSC is consulted when determining whether or not individuals like Plaintiff should have identification badges revoked.

236.   Consulting the lists maintained by Defendants to determine whether an individual is a threat, and to accordingly suspend them, is a practice that in and of itself lacks substantive due process protections, as those individuals, too, lack any pre-deprivation hearings.

237.   In addition, Defendants' refusal to separate inculpatory and/or exculpatory information pertaining to Plaintiff, which supported labeling Plaintiff as a security threat for nearly three years, by merely concluding the information is "inextricably intertwined" with classified data, prevented Plaintiff and his counsel from the safeguards required by the Due Process Clause.

238.   None of the Defendants can demonstrate that there is no less restrictive means by which to achieve any compelling interests without disregarding Plaintiff's due process rights.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

239.   Plaintiff has therefore been deprived of his protected liberty interests without adequate substantive due process.

## B.   COUNT THREE:

### *VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT*

240.   Plaintiff hereby incorporates by reference all numbered paragraphs set forth above.

241.   The Administrative Procedure Act ("APA") requires federal agencies to give notice prior to revoking agency-provided licensing, unless they give notice as to the cause for revocation.

242.   Defendants Wolf and Pekoske violated the Administrative Procedure Act.

243.   When licenses are required by law, agencies, in granting licenses, must comply with the same procedures governing formal rulemaking and adjudication.

244.   Adjudications are subject to due process requirements when the hearing involves a deprivation of a property or liberty interest.

245.   Defendants violated the APA because Defendants' actions were arbitrary, capricious, an abuse of discretion, without due process, otherwise not in accordance with law, and without observance of procedures required by law.

246.   Plaintiff tried everything he could, but was not notified of any cause.

247.   The STA Redress Process states that "[i]f applicable and upon request, TSA will provide to the applicant requesting review an unclassified summary of classified evidence upon which the Final Determination was based." *Id.* at 13(e)(1).

248.   Plaintiff never even received an unclassified summary despite his request, as Defendants stated the information counsel and Plaintiff would otherwise remain entitled to was "inextricably intertwined" with classified information.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

249.   The STA Redress Process also states that the "TSA will not disclose to the applicant, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d)." STA Redress Process at 13(e)(1)(i).

250.   This rule, apparently, means that not even counsel for Plaintiff could attend the classified hearing, the only portion where the actual basis for the determination against Plaintiff was presented to the ALJ.

251.   E.O. 12968 section 1.1(d) merely states that

Classified information" means information that has been determined pursuant to Executive Order. 12958, or any successor order, Executive Order No. 12951, or any successor order, or the Atomic Energy Act of 1954 (42 U.S.C. 2011), to require protection against unauthorized disclosure.

252.   None of the above authorities, nor their successors, explicitly prohibits any plaintiffs or counsel for plaintiffs from *ever* obtaining classified information as to the revocation of workers' identification badges, such as airport-issued and or/airport-approved media.

253.   As currently written, Defendants' rule did not even permit Attorney Swift, who already has SECRET security clearance, access to the material information regarding Plaintiff necessary for counsel for Plaintiff to prepare a meaningful defense.

254.   Nonetheless, Defendants' rules state that the agencies will not disclose such classified information to applicant or counsel *altogether*.

255.   This failure is an abuse of discretion and is exceeds the authority Defendants have to determine whether or not individuals, including Plaintiff and Attorney Swift, may review classified information about Plaintiff which is necessary to present a meaningful defense.

256.   In fact, Section 5.2 of the Executive Order, which Defendants cite as authority, states that applicants and employees who are determined not to meet the standards for access to classified

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

information *shall* be "provided as comprehensive and detailed a written explanation for the basis for that conclusion as the national security interests of the United States and other applicable law permit" and further state that such applicants *shall* be "provided a *reasonable opportunity* to reply in writing to, and to request a review of, the determination" and further it states that such applicants *shall* be "provided written notice of and reasons for the results of the review." (emphasis added.)

257.   Defendants have provided neither a detailed nor comprehensive written explanation for the revocation of Plaintiff's airport workers' identification badge. In fact, they have not provided *any* reasons for this decision.

258.   Despite the fact that Attorney Swift has the appropriate security clearance, Defendants acted arbitrarily and capriciously by preventing him from seeing *any* of the classified or Sensitive Security Information ("SSI"), which entirely forms the basis for Defendants' decision about Plaintiff.

259.   Defendants further acted arbitrarily and capriciously by preventing Attorney Swift from attending the classified portion of the bifurcated hearing, the only time the relevant information forming the basis for the decision against Plaintiff was presented to the ALJ.

260.   Defendants also acted arbitrarily and capriciously by not allowing Attorney Jump to apply for the necessary security clearance to be able to view such information, despite no applicable Executive Order or other authority banning counsel from obtaining security clearance for the purpose of preparing a defense for Plaintiff.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

261.    As stated in the Executive Order to which Defendants cited in the STA Redress Process, Applicants who have their workers' identification badges revoked are entitled to as detailed and comprehensive of information as possible.

262.    Therefore, Plaintiff himself, even without counsel, was at least entitled to an unclassified summary of the claims against him, which, if necessary, entailed the separation of SSI from classified information.

263.    Refusing to separate the information counsel is otherwise entitled to from classified information that Defendants, without direct authority, claim even counsel with Security clearance cannot see, is arbitrary, capricious, and an abuse of discretion.

264.    Attorney Swift, if not additionally co-counsel Attorney Jump, should have been able to see the relevant information pertaining to Plaintiff, even if inextricably interwoven with classified information.

265.    Defendants' actions were arbitrary, capricious, and an abuse of the discretion granted to them.

266.    Further, as stated herein, Defendants' actions did not afford Plaintiff the due process protections and procedural requirements required by law at any relevant stage of the administrative proceedings.

267.    Defendants' actions, which exceed the scope of authority granted to them, prevented Plaintiff and Plaintiff's counsel from a reasonable opportunity to review that decision.

268.    These arbitrary and capricious actions of Defendants further hindered Plaintiff's ability to contest the deprivation of his airport privileges and the loss of his protected interests, for nearly

three years, and are not in accordance with Defendants' authority granted under the laws of the United States or by the Executive Branch.

269.   Therefore, Defendants violated the Administrative Procedure Act by acting in arbitrary and capricious manners, abusing the discretion granted to them, and providing no other meaningful avenue of redress for Plaintiff, or those similarly situated to Plaintiff, to utilize.

270.   These violations by Defendants directly caused Plaintiff's loss of employment and lost wages throughout the intervening time of nearly three years before his status was restored.

271.   Plaintiff continues to suffer ongoing damages, due to lost opportunities and the negative impact of this loss of employment and damage to his reputation on his career opportunities.

272.   Plaintiff has further suffered damages as a result of Defendants' violations which impact his professional reputation and ability to advance his career opportunities.

C.     **COUNT FOUR:**

### *VIOLATION OF SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866,* *BY DEFENDANT TRUONG*

273.   Plaintiff hereby incorporates all numbered paragraphs set forth above.

274.   Under 42 U.S.C. § 1981, all persons within the jurisdiction of the United States are entitled to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

275.   Furthermore, under 42 U.S.C. § 1981, all persons are protected from impairment of the right to make and enforce contracts.

276.   In the event Defendant Truong's actions described above are deemed to be outside of the scope of his official duties, upon information and belief, Truong acted in retribution by taking

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

action himself and/or encouraging Defendants to place Plaintiff on the Terrorist Watchlist, after Plaintiff refused to act as an informant and failed to meet with him again.

277. Here, this placement on the Terrorist Watchlist, due to Defendant Truong's communications to the other Defendants, directly resulted in Plaintiff's constructive discharge from Delta, as Plaintiff's position at Delta required that he hold a valid SIDA badge.

278. Defendant Truong did so with the knowledge that placement on the Terrorist Watchlist would revoke Plaintiff's SIDA badge, therefore precluding him from his chosen employment.

279. Defendant Truong's communications to Defendants interfered with Plaintiff's employment, even if his influence did not directly cause Plaintiff's placement on any watchlist.

280. Even if Defendant Truong did not directly place or cause Plaintiff to be placed on any watchlist maintained by Defendants, Defendant Truong nonetheless interfered with Plaintiff's employment by taking steps which caused him to lose his necessary credentials.

281. Defendant Truong interfered with the continuing employment contract between Plaintiff and Delta because of discriminatory animus, based on Plaintiff's race and/or national origin.

282. Defendant Truong unlawfully interfered with and violated Plaintiff's contractual right to employment, in violation of 42 U.S.C. § 1981.

**D. COUNT FIVE:**

***ATTORNEYS' FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT AGAINST ALL DEFENDANTS***

283. Plaintiff hereby incorporates by reference all numbered paragraphs set forth above.

284. The Equal Access to Justice Act, as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412 (hereinafter "EAJA"), provides for the award of costs and attorneys' fees to a prevailing party in litigation against the United States or one of its agencies.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

285.   Plaintiff respectfully requests that this Court grant him costs and fees under the EAJA.

## V.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment of liability in favor of the Plaintiff and against the Defendants, and respectfully requests that this Court grant the following relief:

1.   For a trial before a jury;

2.   For a declaration that the official capacity Defendants violated Plaintiff's rights to procedural due process under the Fifth Amendment to the U.S. Constitution;

3.   For a declaration that the official capacity Defendants violated Plaintiff's rights to substantive due process under the Fifth Amendment to the U.S. Constitution;

4.   For a declaration that the actions of Defendants Wolf and Pekoske against Plaintiff constitute an abuse of discretion and, accordingly, violate the APA;

5.   For a declaration that the actions of Defendants Wolf and Pekoske against Plaintiff were arbitrary and capricious and, accordingly, violate the APA;

6.   For a declaration that the official capacity Defendants' policies, practices, and customs, violate the Constitution, and fail to allow for a meaningful opportunity for Persons like Plaintiff to be heard;

7.   For a revised STA Redress Process which allows counsel to attend classified portions of hearings relevant to individuals like Plaintiff in these matters, against Defendants Wolf and Pekoske;

8.   For a list of reasons to be supplied in all revocation proceedings by the official capacity Defendants in the future that is adequate enough to allow Plaintiff and counsel to meaningfully be heard;

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

9.      For discovery to be allowed to be conducted in all revocation proceedings by the official capacity Defendants in the future;

10.     For subpoenas to be allowed to be issued in all revocation proceedings by the official capacity Defendants in the future;

11.     For compensatory damages against all Defendants, where appropriate, in amounts to be proven in a jury trial;

12.     For nominal damages against all Defendants, where appropriate, in amounts to be proven in a jury trial;

13.     For lost wages in an amount to be proven at trial against all Defendants, where appropriate, in amounts to be proven in a jury trial;

14.     For all costs and expenses herein, against all Defendants;

15.     For attorney's fees and costs, including reasonable attorneys' fees and costs as provided by any applicable provision of the law, against all Defendants;

16.     Any additional relief this Court deems just, proper, and equitable.

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

Respectfully submitted this <u>16th</u> day of December, 2019.

*/s/ Charles D. Swift*
*/s/ Christina A. Jump*
Charles D. Swift
Counsel for Plaintiff
WA State Bar No. 41671
Christina A. Jump
Pro Hac Vice Counsel for Plaintiff
(application pending)
TX State Bar No. 00795828
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
Tel: (972) 914-2507
Fax: (972) 692-7454
cswift@clcma.org
cjump@clcma.org


*/s/ Alisa R. Brodkowitz*
Alisa R. Brodkowitz
Local Counsel for Plaintiff
WA State Bar No. 31749
Friedman | Rubin PLLP
1109 1st Ave., Ste. 501
Seattle, WA 98101
Tel: (206) 501-4446
Fax: (206) 623-0794
alisa@friedmanrubin.com

Plaintiff's Complaint, Page 42

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507

# **VERIFICATION OF COMPLAINT**

I, Lassana Magassa, declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge, information, and belief.

Executed on this <u>16th</u> day of December, 2019.


_____

Signature of Declarant, Lassana Magassa

Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Ste. 102, Richardson, TX
Telephone: (972) 914-2507