1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT FOR THE
                       WESTERN DISTRICT OF WASHINGTON
8                                  AT SEATTLE

9    LASSANA MAGASSA,                          CASE NO.  C19-2036RSM

                     Plaintiff,
10                                             ORDER RE: DEFENDANTS' MOTIONS TO
            v.                                 DISMISS
11
     CHAD WOLF, in his Official Capacity as
12   Acting Secretary of the Department of
     Homeland Security, et al.,
13
                     Defendants.
14

15                          I.      INTRODUCTION

16          This matter comes before the Court on two Motions to Dismiss: one filed by Defendant

17   Minh Truong, sued in his individual capacity, Dkt. #17, and Defendants Chad Wolf, David

18   Pekoske, Mark Morgan, William Barr, Christopher Wray, and Charles Kable, sued in their official

19   capacities (the "Official Capacity Defendants"), Dkt. #18.  Plaintiff Lassana Magassa opposes both

20   motions.  Dkts. #22, #26.  The Court finds oral argument unnecessary to resolve the underlying

21   issues.  Having reviewed the relevant briefing and the remainder of the record, the Court GRANTS

22   Defendant Truong's Motion to Dismiss and GRANTS IN PART and DENIES IN PART Official

23   Capacity Defendants' Motion to Dismiss as set forth below.

24

## II.   BACKGROUND

**A. TSA Security Threat Assessments and Redress Procedures**

Civil aviation security regulations require certain employees of U.S. airport operators to undergo a Security Threat Assessment conducted by the U.S. Transportation Security Administration ("TSA") or a "comparable" security threat assessment conducted by another governmental agency.   49 C.F.R. §§ 1540.201(a), 1540.203(a), (f).[1]  TSA determines that an individual is a security threat if the individual is known to pose or is suspected of posing a threat to national security, to transportation security, or of terrorism.  *Id.* at § 1540.203(c).  To prevent and detect entry of unauthorized individuals into secure areas of the airport, airport operators issue badges for access into Security Identification Display Areas ("SIDA").  *Id.* at §§ 1540.5, 1542.203.

Individuals identified as security threats who wish to appeal TSA's determination may do so through a redress process set forth under 49 C.F.R. § 1515 (the "STA Redress Process").  An individual who has been issued an Initial Determination of Threat for reasons other than criminal conviction, immigration status, or mental capacity may appeal the TSA's determination in accordance with 49 C.F.R. § 1515.9.  If TSA concludes that the applicant does not pose a security threat, TSA serves a Withdrawal of the Initial Determination on the applicant and the applicant's employer.  *Id.* at § 1515.9(d).  However, if TSA concludes that the applicant poses a security threat following an appeal, TSA serves a Final Determination of Threat Assessment on the applicant.  *Id.* at § 1515.9(c).  The applicant may then appeal the TSA's Final Determination to an Administrative Law Judge ("ALJ") by filing a request for review.  *Id.* at § 1515.11(b).  Pursuant to 49 C.F.R. §

[1] Neither party cites to TSA's regulations for Security Threat Assessments, 49 C.F.R. §§ 1540.201-1540.209, or Appeal and Waiver Procedure for Security Threat Assessments, 49 C.F.R. § 1515.  Accordingly, the Court takes judicial notice of the relevant provisions as set forth in the Code of Federal Regulations.  Fed. R. Evid. 201(c)(1).  Official Capacity Defendants summarize these procedures, in part, in Exhibit 2 to their Motion to Dismiss.  *See* Dkt. #18-2 at 6-38.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS - 2

1515.11(e)(3), the ALJ reviews any classified information on an *ex parte*, *in camera* basis. Finally, either party may request that the TSA Final Decision Maker review the ALJ's decision. *Id.* at § 1515.11(g). The final order of the TSA Final Decision Maker is a final order subject to judicial review under 49 U.S.C. § 46110. 49 C.F.R. § 1515.11(h).

**B. Revocation of Plaintiff's Airport Privileges**

Plaintiff Magassa is an African American, Muslim U.S. citizen and Seattle resident. Dkt. #1 at ¶ 1. In June 2015, Plaintiff underwent extensive background checks, including an interview by a U.S. Customs and Border Protection ("CBP") agent, in order to be hired for a position at Delta Air Lines, Inc. ("Delta") as a Cargo Customer Service Agent. *Id.* at ¶¶ 18-19. During the interview, Plaintiff discussed his religious beliefs and desire to work for law enforcement, including for the Federal Bureau of Investigation ("FBI"). The CBP agent asked if he may pass along Plaintiff's resume to law enforcement colleagues, and Plaintiff agreed. *Id.* at ¶ 21. Plaintiff subsequently received clearance confirming that he posed no threat to national security or transportation security and was not a terrorism threat. He began working for Delta on June 22, 2015. *Id.* at ¶¶ 22-23.

On or around October 2015, CBP agent Tad Foy contacted Plaintiff for an interview. *Id.* at ¶¶ 25-26. Plaintiff met with Foy at the Seattle-Tacoma International Airport ("SeaTac") and again expressed interest in working for law enforcement and expanding his network. Foy introduced Plaintiff to FBI Special Agent Minh Truong over email, and Truong contacted Plaintiff in late October 2015 for a meeting. *Id.* at ¶ 29. Plaintiff and Truong met for coffee, during which Truong questioned Plaintiff on his Muslim faith and views of violence. *Id.* at ¶ 30. Truong asked Plaintiff to work as an informant for the FBI for compensation. Plaintiff refused on the basis that working as an informant was against his personal and religious reliefs, and that agreeing to such a

1  role would erroneously imply that Plaintiff surrounded himself with bad people.  *Id.* at ¶¶ 31-32.

2  Plaintiff stated that he remained interested in working for the FBI as either an agent or an intern.

3  On June 26, 2016, TSA approved Plaintiff for CBP Global Entry program membership, which

4  allows expedited re-entry into the United States from foreign countries.

5      In September 2016, Truong attempted to contact Plaintiff again, but "they did not connect."

6  *Id.* at ¶ 35.  In November 2016, Truong visited Plaintiff's residence.  *Id.* at ¶¶ 38-39.  Plaintiff was

7  not home, but Truong spoke with Plaintiff's wife and represented that he and Plaintiff were "good

8  friends."  Plaintiff's wife called Plaintiff with Truong present, and Truong stated that he wanted to

9  meet Plaintiff in-person that same day.  Plaintiff responded that he was unavailable and would call

10  Truong back later.  Plaintiff obtained legal representation shortly thereafter, and Truong stopped

11  attempting to contact him.  *Id.* at ¶ 40.

12      On October 3, 2016, Plaintiff traveled from Seattle to Berlin, Germany, by way of Paris,

13  France, to attend an annual conference of the Association of Internet Researchers.  *Id.* at ¶¶ 43-45.

14  Plaintiff had no problems traveling to Berlin or on his return leg from Berlin to Paris on or around

15  October 7, 2016.  However, on his return leg from Paris to Seattle, Plaintiff suffered extensive

16  delays, secondary screenings, and markings on his boarding passes consistent with someone placed

17  on a terrorist watch list.  *Id.* at ¶¶ 46-58.  These delays and searches forced Plaintiff to rebook his

18  return leg several times due to his scheduled flights leaving while he underwent screenings.  When

19  he finally arrived in the United States through Cincinnati, Ohio, Plaintiff received an error message

20  at the Global Entry kiosk.  The error message informed Plaintiff that his privileges were revoked,

21  and that he had lost membership in the Global Entry program.  Government agents and airport

22  officials at the Cincinnati airport detained and interviewed Plaintiff for three hours but could not

23  identify any reason he was triggering alerts.

24

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS - 4

When Plaintiff finally reached Seattle on or around October 10, 2016, he was met at the gate by his supervisor at Delta, the Head of Corporate Security at Delta, and a police officer. *Id.* at ¶¶ 58-62. They informed Plaintiff that because his TSA status had changed, Delta had no choice but to prevent him from returning to work and to revoke his workers' identification badge. The airport officials stated they had no further information to provide and escorted Plaintiff from the premises. Shortly thereafter, Plaintiff received a letter dated October 8, 2016 from the Port of Seattle Aviation Security, notifying him that his SIDA identification badge was revoked. Per Delta's request, Plaintiff returned to the airport to clear out his locker and was again informed that nobody knew why his TSA status had changed.

Knowing that his termination from Delta was inevitable and imminent, Plaintiff submitted a letter of resignation on October 12, 2016 in order to remain marketable for future jobs. *Id.* at ¶¶ 64-68. His discharge from Delta was effective as of October 26, 2016. Plaintiff never experienced disciplinary problems during his time with Delta and had planned to begin a data analyst position upon returning from Berlin. Delta officials have confirmed that they do not know why Plaintiff's status changed but had no choice but to suspend his airport privileges pursuant to TSA's orders. Plaintiff claims that his loss of airport privileges coincided with extreme travel difficulties, including sounding alarms whenever his boarding pass was scanned and missing flights due to extensive screenings. *Id.* at ¶¶ 71-82. These difficulties caused Plaintiff emotional distress and embarrassment and caused him to be late for and miss several professional academic events.

## C. Plaintiff's Administrative Proceedings

On November 4, 2016, Plaintiff received formal notification of TSA's Initial Determination of Eligibility and Immediate Suspension indicating that he was no longer eligible

1   to hold airport-approved and/or airport-issued personnel identification media.  *Id.* at ¶¶ 84-89.  On

2   November 13, 2016, Plaintiff requested the release of any and all documentation that the TSA

3   relied upon in reaching its decision.  On December 22, 2016, TSA provided Plaintiff with

4   heavily-redacted documents, including a Security Threat Assessment Board report dated October

5   20, 2016.  Plaintiff claims that due to the heavy redactions, the materials contained no substantive

6   information as to why Plaintiff's badge and airport privileges were revoked.

7        On February 10, 2017, Plaintiff filed an appeal of the TSA's Initial Determination of

8   Eligibility and Immediate Suspension.  *Id.* at ¶¶ 90-98.  Plaintiff received a Final Determination

9   of Eligibility on June 19, 2017, confirming he was not eligible for airport-approved and/or airport-

10  issued personnel identification media.  Plaintiff filed a timely appeal of the Final Determination

11  pursuant to 49 C.F.R. § 1515.11(b). The Honorable George J. Jordan, ALJ, presided over

12  Plaintiff's appeal.  The ALJ ordered a bifurcated hearing with the classified and unclassified

13  portions to be scheduled after an *in camera* review of TSA's classified information.  Plaintiff's

14  counsel sought approval to review the classified information given that one attorney, Mr. Charles

15  D. Swift, has "SECRET" security clearance.

16       After completing an *in camera* review, the ALJ determined that TSA could not provide

17  Plaintiff with the classified materials or an unclassified summary of the materials.  *Id.* at ¶¶ 99-

18  110.  The ALJ subsequently denied Plaintiff's motion requesting permission for Plaintiff to attend

19  the classified portion of the bifurcated hearing and his motion requesting review of the classified

20  and sensitive information.  The ALJ denied both motions on the basis that the classified and

21  sensitive information was "inextricably intertwined" with information that could be redacted and

22  was therefore unreviewable in its entirety—even by counsel with "SECRET" security clearance.

23

24

1   The ALJ also denied Plaintiff's request to schedule the classified portion of the hearing before the

2   unclassified portion.

3          On April 24, 2018, Plaintiff and counsel attended the unclassified portion of the hearing.

4   The ALJ informed Plaintiff that the purpose of the hearing was to enable him "to create as complete

5   of a record for an unclassified decision as possible" and to produce proposed findings of fact and

6   conclusions of law for making a final decision.  *Id.* at ¶¶ 112-116.  Plaintiff objected to submitting

7   proposed findings of fact and conclusions of law on the basis that he and his counsel had "no idea

8   what the basis for Plaintiff's denial is."  The classified portion of the bifurcated hearing took place

9   on April 25, 2018.  *Id.* at ¶¶ 130-131.  Unlike the unclassified hearing, which provided no

10  discussion of the basis for Plaintiff's determination, the classified hearing included TSA witnesses

11  testifying as to Plaintiff and the basis for his determination.

12         On April 29, 2019, the ALJ ruled that the TSA's June 19, 2017 Final Determination of

13  Eligibility was "supported by substantial evidence in the record" and was not arbitrary, capricious,

14  an abuse of discretion, or otherwise not in accordance with law.  *Id.* at ¶¶ 135-138.  Plaintiff timely

15  appealed the ALJ's decision to the TSA Final Decision Maker on the basis that (1) the unclassified

16  decision was not supported by substantial evidence; and (2) neither Plaintiff nor his counsel was

17  permitted to attend the classified portion of the hearing nor received the Classified Addendum

18  upon which the ALJ's ruling relied.

19         On July 26, 2019, TSA issued a Withdrawal of Final Determination which notified Plaintiff

20  that he was now "eligible to maintain airport-issued identification media."  *Id.* at ¶¶ 141-144.  This

21  withdrawal rescinded TSA's June 19, 2017 Final Determination of Eligibility that found Plaintiff

22  ineligible to hold airport-issued identification media because he posed a security threat.  The

23  Withdrawal provided no reasons explaining TSA's previous finding that Plaintiff was a security

24

1  threat.   Shortly after TSA's withdrawal, Plaintiff re-secured a SIDA badge and resumed

2  employment with another airline in a position similar to his job at Delta.

3  **D. Claims against Defendants**

4  On December 16, 2019, Plaintiff filed this action against Defendant Truong in his

5  individual capacity and Defendants Chad Wolf (Acting Secretary of the U.S. Department of

6  Homeland Security ("DHS")); David Pekoske (Administrator of TSA); Mark Morgan (Acting

7  Commissioner of CBP); William Barr (U.S. Attorney General); Christopher Wray (Director of the

8  FBI), and Charles Kable (Director of the Terrorist Screening Center).  *Id.* at ¶¶ 2-6.  Plaintiff

9  alleges violations of Section 1981 of the Civil Rights Act, 42 U.S.C. § 1981, by Special Agent

10  Truong.  *Id.* at ¶¶ 273-282.  Plaintiff also alleges that Official Capacity Defendants violated his

11  Fifth Amendment due process rights and the Administrative Procedure Act ("APA").  *Id.* at ¶¶

12  154-272.  Plaintiff claims that as a result of these violations, he lost income and opportunities, was

13  precluded from pursuing his chosen employment, suffered reputational harm and stigmatization,

14  and experienced extreme travel difficulties for nearly three years.  *Id.* at ¶¶ 143, 146-146.  Plaintiff

15  also claims that he continues to experience travel difficulties as a result of the previous threat

16  designation and continues to be stigmatized.  *Id.* at ¶¶ 147-148.

17  Defendants have moved for dismissal of Plaintiff's claims against Defendant Truong and

18  the Official Capacity Defendants.  Dkts. #17, 18.  The Court will address each motion in turn.

19  **III.    DISCUSSION**

20  **A. Legal Standards**

21  1.  <u>Motion to Dismiss for Lack of Jurisdiction under 12(b)(1)</u>

22  Federal courts are tribunals of limited jurisdiction and may only hear cases authorized by

23  the Constitution or a statutory grant.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S.

24

1   375, 377 (1994).  The burden of establishing subject matter jurisdiction rests upon the party

2   seeking to invoke federal jurisdiction.  *Id.*  Once it is determined that a federal court lacks subject

3   matter jurisdiction, the court has no choice but to dismiss the suit.  *Arbaugh v. Y & H Corp.*, 546

4   U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks

5   subject-matter jurisdiction, the court must dismiss the action.").

6             2.   <u>Motion to Dismiss under 12(b)(6)</u>

7         In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as

8   true and makes all inferences in the light most favorable to the non-moving party.  *Baker v.*

9   *Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).

10  However, the court is not required to accept as true a "legal conclusion couched as a factual

11  allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

12  U.S. 544, 555 (2007)).  The complaint "must contain sufficient factual matter, accepted as true,

13  to state a claim to relief that is plausible on its face."  *Id.* at 678.  This requirement is met when

14  the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the

15  defendant is liable for the misconduct alleged."  *Id*.  The complaint need not include detailed

16  allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the

17  elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Absent facial plausibility,

18  a plaintiff's claims must be dismissed.  *Id.* at 570.

19        For the reasons set forth below, the Court grants dismissal of Plaintiff's claims with the

20  exception of his APA challenge to the STA Redress Process.  The Court finds that amendment of

21  the Complaint would be futile with respect to those claims dismissed under Rule 12(b)(1) for lack

22  of subject matter jurisdiction, but the Court will permit Plaintiff to amend the Complaint with

23  respect to claims dismissed pursuant to Rule 12(b)(6).

24

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS - 9

1

**B. Section 1981 Claim against Special Agent Truong**

2

Section 1981 "guarantees 'all persons' the right to 'make and enforce contracts.'"

3

*Johnson v. Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1122 (9th Cir. 2008) (quoting 42 U.S.C.

4

§ 1981(a)). "This right includes the right to the 'enjoyment of all benefits, privileges, terms, and

5

conditions of the contractual relationship[.]'" *Id.*, quoting 42 U.S.C. § 1981(b). A § 1981 claim

6

"must initially identify an impaired 'contractual relationship' . . . under which the plaintiff has

7

rights." *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476 (2006).

8

Plaintiff claims that Defendant Truong, acting outside the scope of his official duties,

9

interfered with Plaintiff's employment contract with Delta after Plaintiff refused to act as an

10

informant and to meet with him again. Dkt. #1 at ¶¶ 276-278. Specifically, Plaintiff alleges that

11

Truong either directly placed or caused others to place him on a terrorist watchlist in the Terrorist

12

Screening Center Database ("TSDB"), which is a database of terrorist watch lists maintained by

13

a sub-agency of the FBI called the Terrorist Screening Center ("TSC"). *Id.* at ¶¶ 279-280.

14

Plaintiff contends that Defendant Truong's actions were motivated by a discriminatory animus

15

based on Plaintiff's race and/or national origin. *Id.* at ¶ 281. Defendant Truong moves to dismiss

16

Plaintiff's Section 1981 discrimination claim for lack of subject matter jurisdiction and failure to

17

state a claim. Dkt. #17.

18

The Court agrees that Plaintiff's claim against Defendant Truong fails for lack of subject

19

matter jurisdiction, given that Section 1981 only applies to conduct by private or state actors. 42

20

U.S.C. § 1981(c) ("The rights protected by this section are protected against impairment by

21

*nongovernmental discrimination and impairment under color of State law*.") (emphasis added).

22

For that reason, to the extent that Plaintiff challenges Defendant Truong's actions under the scope

23

of his authority as a federal agent, Section 1981 does not apply. *See Wolde-Giorgis v. Symington*,

24

225 F.3d 666 (9th Cir. 2000) ("The plain language of 42 U.S.C. §§ 1981, 1983 does not permit actions against federal employees acting under federal law."); *Finch v. U.S. Dist. Court W. Dist. of Washington at Tacoma*, No. C19-6131-RJB-TLF, 2020 WL 2115875, at *2 (W.D. Wash. Apr. 10, 2020), *report and recommendation adopted*, No. C19-6131-RJB-TLF, 2020 WL 2113832 (W.D. Wash. May 4, 2020) ("[B]y their very terms, [§§ 1981 and 1983 claims] apply to individuals acting 'under color of state law' and not under color of federal law.") (citing *Gottschalk v. City and Cty. of S.F.*, 964 F. Supp. 2d 1147, 1162-63 (N.D. Cal. 2013)); *see also Cox v. United States*, No. CV 17-00001 JMS-KSC, 2017 WL 2385341, at *8 (D. Haw. May 31, 2017) ("§ 1981 does not apply to individuals acting under color of federal law.").

Plaintiff insists that Section 1981 applies here, given that he challenges Defendant Truong's private conduct for actions outside the scope of his duties as a federal agent. Dkt. #22 at 13 ("[Truong] has been sued in his *individual* capacity, not his official capacity . . . Section 1981 does apply to defendants acting as private actors, by its plain language.") (emphasis in original). Defendant Truong maintains that Plaintiff's argument contradicts the gravamen of his complaint, which only addresses Defendant Truong's actions taken in the course of his official duties. Dkt. #17 at 6-7 (citing *Elsharkawi v. United States*, No. 818-CV-01971JLSDFM, 2019 WL 3811518, at *7 (C.D. Cal. Aug. 8, 2019)). In *Elsharkawi,* the court addressed the same argument Plaintiff raises here: that federal officials, sued in their personal capacities for conduct allegedly beyond the lawful authority of their official positions, must be considered "nongovernmental" actors under Section 1981. *Elsharkawi*, 2019 WL 3811518, at *7. The court rejected plaintiff's argument, reasoning that "such a conclusion contradicts the obvious nature of this suit: that Individual-Capacity Defendants allegedly improperly *asserted the power of their federal positions* to Plaintiff's detriment." *Id.* (emphasis in original).

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS - 11

The Court finds the reasoning in *Elsharkawi* persuasive.  As in that case, Plaintiff attempts to bring a Section 1981 claim against a federal official by suing the officer in his individual capacity.  Plaintiff's Section 1981 claim alleges that Defendant Truong asserted his power as a federal agent to (1) place Plaintiff on the Terrorist Watchlist; (2) encourage Official Capacity Defendants to place Plaintiff on the Watchlist; and/or (3) otherwise interfere with Plaintiff's employment by nature of his position at the FBI.  *See* Dkt. #1 at ¶¶ 276-282.  These claims plainly address actions taken by Defendant Truong in the course of his employment as a federal agent acting under federal authority, rather than as a private, non-governmental actor.  Consequently, because Plaintiff challenges actions committed by Defendant Truong "with the imprimatur of federal authority," Section 1981 provides no cause of action.  *Elsharkawi*, 2019 WL 3811518, at \*7; *see also Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005); *Gottschalk*, 964 F. Supp. 2d at 1162–63; *Davis-Warren Auctioneers, J.V. v. F.D.I.C.*, 215 F.3d 1159, 1161 (10th Cir. 2000).

Accordingly, Plaintiff's Section 1981 claim against Defendant Truong is dismissed for lack of subject matter jurisdiction.  Because this issue is dispositive, the Court need not reach Defendant Truong's remaining arguments for dismissal.

**C. Claims against Official Capacity Defendants**

Plaintiff alleges three counts of violations by the Official Capacity Defendants under the Fifth Amendment due process clause and the APA.  Count I alleges that the STA Redress Process is constitutionally inadequate and deprives Plaintiff of protected liberty interests such as freedom to pursue his chosen profession, freedom from false stigmatization, and freedom to travel unimpeded across borders, in violation of his Fifth Amendment right to procedural due process.  *Id.* at ¶¶ 154-218.  Count II alleges that the STA Redress Process unduly burdens these same liberty interests and therefore violates Plaintiff's Fifth Amendment right to substantive due process.  *Id.*

at ¶¶ 219-239.  Finally, Count III claims that the STA Redress Process and TSA's implementation of that process is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.  *Id.* at ¶¶ 240-272.

Official Capacity Defendants move to dismiss for lack of subject matter jurisdiction on grounds of sovereign immunity, lack of standing, and lack of jurisdiction under 49 U.S.C. § 46110, as well as for failure to state a claim.  Dkt. #18 at 11-29.  The Court will address each argument in turn.

　　　　1.　Sovereign Immunity

As an initial matter, Plaintiff seeks monetary damages for the Government's past actions in the form of compensatory damages, nominal damages, and lost wages as a result of his badge revocation.  Dkt. #1 at 41, ¶¶ 11-13.  Defendants argue that sovereign immunity bars these claims for relief.  Dkt. #18 at 25-26.  The Court agrees.

As a general rule, the United States may not be sued unless it has waived its sovereign immunity.  *Bramwell v. U.S. Bureau of Prisons,* 348 F.3d 804, 806 (9th Cir. 2003).  Accordingly, unless the United States consents to be sued, the Court lacks subject matter jurisdiction over claims against the federal government.  *United States v. Sherwood,* 312 U.S. 584, 586 (1941); *see also Consejo de Desarrollo Economico de Mexicali, A.C. v. United States,* 482 F.3d 1157, 1173 (9th Cir. 2007) ("A court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim.") (internal citations omitted). The doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities. *Hodge v. Dalton* 107 F.3d 705, 707 (9th Cir.1997) (citing *S. Delta Water Agency v. U.S., Dep't of Interior,* 767 F.2d 531, 536 (9th Cir. 1985)).  The federal government's

waiver of sovereign immunity "must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena,* 518 U.S. 187, 192 (1996) (internal citations omitted).  Any limitations and conditions upon the waiver must be strictly observed, *Hodge,* 107 F.3d at 707, and the Court must construe any ambiguities in the scope of such waiver in favor of immunity. *Lane,* 518 U.S. at 192 (citing *United States v. Williams,* 514 U.S. 527, 531 (1995)).

    With respect to claims under the Fifth Amendment due process clause, the Ninth Circuit has recognized that district courts lack jurisdiction to hear claims for monetary relief against the federal government for alleged due process violations.  *See Munns v. Kerry*, 782 F.3d 402, 413 (9th Cir. 2015) ("The only possible waivers of sovereign immunity that the plaintiffs allege involve the Due Process and Takings Clauses of the Fifth Amendment.  But these provisions are not general waivers of sovereign immunity and do not establish jurisdiction in the district courts over monetary claims"); *see also E.V. v. Robinson*, 906 F.3d 1082, 1095 (9th Cir. 2018) (Finding that suits against "federal officials in their official capacities seeking damages are ipso facto against the government for purposes of sovereign immunity.").  To the extent Plaintiff seeks monetary damages under the APA, these claims are likewise barred.  For a district court to exercise jurisdiction over an APA claim, a plaintiff's claim must be for "relief *other than money damages*."  5 U.S.C. § 702 (emphasis added); *Harger v. Dep't of Labor*, 569 F.3d 898, 904 (9th Cir. 2009).

    Plaintiff contends that his claims for monetary relief have jurisdiction given that 49 U.S.C. § 46110 does not bar damages claims.  *See* Dkt. #26 at 19 (citing *Latif v. Holder*, 686 F.3d 1122, 1128 (9th Cir. 2012); *Americopters, LLC v. F.A.A.*, 441 F.3d 726 (9th Cir. 2006), *aff'd sub nom. Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299 (Fed. Cir. 2008)).  The Government argues that the operation of Section 46110 is inapposite, given that Plaintiff has provided no basis for the

1   Court's jurisdiction over these claims for monetary relief.  Dkt. #32 at 8.  The Court agrees.  *Latif*

2   and *Americopters* support the narrow proposition that where jurisdiction exists for constitutional

3   claims for monetary damages, Section 46110 poses no bar to relief.  *See Latif*, 686 F.3d at 1128

4   ("[B]road constitutional claims for damages against the [Federal Aviation Administration

5   ("FAA")] [may] proceed in the district court because, under § 46110, [the courts of appeals] lack

6   jurisdiction to grant damages."); *see also Americopters*, 441 F.3d at 735–37 (same).  Nevertheless,

7   neither of these cases supports the proposition that Section 46110 confers a waiver of sovereign

8   immunity for monetary relief against the federal government.  The Court likewise finds no waiver

9   in the statutory text of Section 46110.  *See Lane,* 518 U.S. at 192 (requiring unequivocal

10   expression of waiver).  Consequently, regardless of whether Section 46110 bars Plaintiff's claims

11   for money damages, this Court lacks jurisdiction over these claims in the first instance.

12   Furthermore, Plaintiff seeks declaratory judgments that the past actions of Official

13   Capacity Defendants violated his procedural and substantive due process rights under the Fifth

14   Amendment and were arbitrary, capricious, and an abuse of discretion under the APA.  Dkt. #1

15   at 40, ¶¶ 2-5.  Because these violations occurred in the past and are not ongoing, this relief is

16   entirely retrospective, not prospective, in nature and therefore barred on sovereign immunity

17   grounds.  *See Green v. Mansour*, 474 U.S. 64, 73 (1985) ("[T]he issuance of a declaratory

18   judgment in these circumstances would have much the same effect as a full-fledged award of

19   damages or restitution by the federal court, the latter kinds of relief being of course

20   prohibited . . . .").

21   For these reasons, Plaintiff's claims for monetary damages and retrospective declaratory

22   relief, Dkt. #1 at 40-41, ¶¶ 2-5; 11-13, are dismissed.

23   *//*

24

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS - 15

2. <u>Article III Standing</u>

Having determined that Plaintiff's claims for monetary damages and retrospective declaratory relief lack subject matter jurisdiction, the Court will now address his remaining claims for prospective injunctive and declaratory relief.  Pursuant to Article III of the U.S. Constitution, federal courts are courts of limited jurisdiction, hearing only live "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992); U.S. Const. art. III, § 2.  To satisfy the case-or-controversy requirement, the plaintiff must establish "(1) [A]n 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  A challenge based on lack of standing is appropriate under Rule 12(b)(1).  *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1317–18 (W.D. Wash. 2014).   Furthermore, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc.,* 528 U.S. at 185 (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983)).

Plaintiff seeks prospective injunctive relief in the form of a revised STA Redress Process, which would (1) grant applicants access to classified portions of hearings; (2) require TSA to supply a list of reasons for the security threat determination; and (3) allow individuals to conduct discovery and issue subpoenas in all revocation hearings.  Dkt. #1 at 40, ¶¶ 7-10.  Plaintiff also seeks a prospective declaratory judgment that Official Capacity Defendants' policies, practices, and customs violate the Constitution and deprive individuals of a meaningful opportunity to be heard.  *Id.* at ¶ 6.

1    To have standing to seek injunctive relief, a plaintiff must demonstrate "that he is

2    realistically threatened by a repetition" of the injury that the injunction seeks to redress.

3    *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012) (quoting *Lyons,* 461 U.S. at 109).  "Past

4    exposure to illegal conduct does not in itself show a present case or controversy regarding

5    injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *O'Shea v.*

6    *Littleton*, 414 U.S. 488, 495–96 (1974).  Continuing, present adverse effects may be found when

7    a plaintiff demonstrates that there is "a sufficient likelihood that he will again be wronged in a

8    similar way."  *Lyons,* 461 U.S. at 111.  To make a sufficient showing, a plaintiff must establish

9    either "that the defendant had, at the time of the injury, a written policy, and that the injury stems

10   from that policy" or "the harm is part of a pattern of officially sanctioned . . . behavior, violative

11   of plaintiff's federal rights."  *Melendres,* 695 F.3d at 998 (quoting *Armstrong v. Davis,* 275 F.3d

12   849, 861 (9th Cir. 2001)) (internal quotations omitted).

13   Regarding standing for declaratory relief, "a plaintiff who has standing to seek damages

14   for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to

15   seek prospective relief such as a declaratory judgment." *Mayfield v. United States,* 599 F.3d 964,

16   969 (9th Cir. 2010).  Mere "psychic satisfaction is not an acceptable Article III remedy because

17   it does not redress a cognizable Article III injury."  *Steel Co. v. Citizens for a Better Env't,* 523

18   U.S. 83, 107 (1998).  Thus, a plaintiff "whose injury lies wholly in the past without a reasonable

19   likelihood of recurring in the future" lacks standing to seek a declaratory judgment.  *Tarhuni v.*

20   *Holder*, 8 F. Supp. 3d 1253, 1267–68 (D. Or. 2014) (citing *Leu v. Int'l Boundary Comm'n,* 605

21   F.3d 693, 694 (9th Cir. 2010)).  Plaintiff must therefore demonstrate that he is reasonably

22   threatened by repetition of the injury to establish standing to seek a declaratory judgment.

23   *//*

24

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS - 17

i.      Injury-in-Fact

The Government argues that Plaintiff lacks standing to pursue his claims given that he was reissued an airport badge in July 2019 and "has held this credential without further incident ever since." Dkt. #32 at 8. As such, Defendants argue, his claims for past injury are moot, and any future injury is merely speculative since he has failed to offer "any actual or reasoned explanation as to why there is any likelihood of that outcome." *Id.* Plaintiff counters that he has standing to seek prospective relief because revocation of his airport privileges "could occur at any time" and would again violate his due process rights, given that he continues to work at a job that requires a SIDA badge and plans to travel in the future. Dkt. #26 at 17.

The Court finds that Plaintiff has sufficiently alleged injury-in-fact. The Government insists that any alleged harm to Plaintiff has been remedied given the TSA's withdrawal of its earlier threat assessment, and that Plaintiff has failed to offer any "reasoned explanation" as to why TSA would again determine him a security risk and revoke his badge. However, the Government neglects to address the fact that so long as Plaintiff continues in his current employment, he must undergo continuous security threat assessments. *See* 49 C.F.R. § 1540.203(j) ("A security threat assessment conducted under this subpart remains valid for five years from the date that TSA issues a Determination of No Security Threat or a Final Determination of Threat Assessment").

Taking Plaintiff's claims as true at this stage of the litigation, he intends to continue working at his current job and therefore remains subject to TSA security threat assessments in order to maintain his required credentials. Dkt. #1 at ¶ 144. Consequently, he remains exposed to TSA's allegedly unlawful STA Redress Process. Courts have recognized that where a plaintiff remains subject to an unlawful policy, "exposure to that policy is both itself an ongoing harm and

1   evidence there is 'sufficient likelihood' that Plaintiffs' rights will be violated again." *Ortega-*

2   *Melendres v. Arpaio*, 836 F. Supp. 2d 959, 979 (D. Ariz. 2011), *aff'd sub nom. Melendres*, 695

3   F.3d at 990 (Finding standing to challenge unlawful vehicle stops even if "[t]he likelihood that

4   any particular named Plaintiff will again be stopped in the same way may not be high."). For that

5   reason, Plaintiff's continued exposure to the STA Redress Procedure means that he is reasonably

6   threatened by repetition of the injury. Accordingly, he has demonstrated sufficient likelihood of

7   harm to establish imminence.

8         The Government counters that insofar as Plaintiff alleges procedural violations, "'a bare

9   procedural violation, divorced from any concrete harm,' cannot establish an injury in fact." Dkt.

10  #18 at 24 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)); *see also Summers v.*

11  *Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some

12  concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient

13  to create Article III standing."). Here, Plaintiff has alleged far more than a procedural right *in*

14  *vacuo*. On the contrary, he has identified concrete interests, including freedom to pursue his

15  chosen profession and freedom from false stigmatization, that were allegedly harmed by the STA

16  Redress Process and face future harm through continued exposure to the unlawful procedure. *See*

17  Dkt. #1 at ¶¶ 164-179.

18        Finally, the Government argues that Plaintiff's "subjective intent to keep working" cannot

19  constitute a future action that threatens injury for purposes of standing. Dkt. #32 at 7. Relying

20  on *Clapper v. Amnesty Int'l USA*, Defendants argue that "the future action in question must be

21  one that threatens *injury*, and thus must be one that the *defendant* may take against the plaintiff,

22  as opposed to a plaintiff's own actions." *Id.* (emphases in original) (citing 568 U.S. 398, 401).

23  The Government's position is untenable. *Clapper* addressed an instance where a party attempted

24

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS - 19

1   to "manufacture standing by choosing to make expenditures based on hypothetical future harm

2   that is not certainly impending." *Clapper*, 568 U.S. at 401.  Here, in contrast, the Court finds no

3   such "manufactured standing"—Plaintiff faces imminent harm simply by continuing to work at

4   his current place of employment.  If the Court were to adopt the Government's position, it would

5   follow that plaintiffs lack standing so long as they can avoid harm by drastically altering their

6   daily activities.  Defendants provide no support for this rigid view of standing, and our case law

7   offers no support for this proposition.  *See, e.g.*, *Melendres*, 695 F.3d at 990 (Motorists subject to

8   illegal vehicle stops, who could avoid such harm by not driving, have standing to seek injunctive

9   relief).  For these reasons, the Court finds that Plaintiff has sufficiently alleged injury-in-fact.

10                          ii.       Causation and Redressability

11          Turning to the remaining two standing requirements, causation and redressability,

12   Plaintiff has sufficiently pleaded injuries related to his career and reputation that occurred and are

13   sufficiently likely to reoccur as a result of the STA Redress Process.  Injunctive and declaratory

14   relief would therefore redress these harms, as they would provide Plaintiff the reasonable

15   opportunity to challenge any future revocation of his SIDA badge and airport credentials.

16          However, as to Plaintiff's travel-related injuries, the Government argues that "the STA

17   Procedures he challenges have nothing to do with, and cannot redress, any travel-related

18   issues . . . ."  Dkt. #32 at 9.  The Court agrees.  As Plaintiff has made clear, the procedure

19   challenged here is the STA Redress Process, which addresses an individual's security threat

20   assessment for accessing secure areas of the airport as an employee—not the DHS Traveler

21   Redress Inquiry Program ("DHS TRIP"), which addresses an individual's placement on a

22   government watch list for flying as a passenger on commercial aircraft.  *See* Dkt. #26 at 16

23   ("Defendants are correct that this action challenges the constitutional adequacy of the STA

24

Redress Process rather than DHS TRIP.").  Plaintiff claims that his travel difficulties coincided with the revocation of his SIDA badge and airport credentials, Dkt. #1 at ¶ 234, yet he fails to allege that the STA Redress Process *caused* his travel-related injuries or that revising the STA Redress Process would redress his travel-related harms.  Instead, the Complaint indicates that his travel difficulties, starting with his October 2015 return from Germany, were caused by his placement on a watch list in the TSDB database either by or at the behest of Special Agent Truong, which separately caused his airport badge revocation.  *Id.* at ¶¶ 57, 78, 277.  Plaintiff further alleges that his travel difficulties persisted even after TSA withdrew its security threat determination and restored his SIDA badge and airport privileges.  *Id.* at ¶ 81.  These claims contradict the notion that revocation of his airport badge directly caused his travel difficulties, or that changes to the STA Redress Process would redress his travel-related harms.

For these reasons, Plaintiff has failed to sufficiently allege causation and redressability between the STA Redress Process and his travel-related injuries.  *Friends of the Earth, Inc.*, 528 U.S. at 180–81.  Plaintiff's claims related to travel are therefore dismissed for lack of standing.

### 3.  Jurisdiction under 49 U.S.C. § 46110

Next, the Government argues that even if Plaintiff has standing, jurisdiction over his claims lies in the court of appeals, not the district court, pursuant to 49 U.S.C. § 46110.  Section 46110 provides:

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security . . . or the Administrator of the Federal Aviation Administration . . .) in whole or in part under this part, part B, or subsection (*l*) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

. . .

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS - 21

1

2

> When the petition is sent to the Secretary, Under Secretary, or Administrator, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Under Secretary, or Administrator to conduct further proceedings.

3

4

49 U.S.C. § 46110(a), (c) (2005).  In determining whether an agency action is an "order" under

5

Section 46110 subject to the exclusive jurisdiction of the court of appeals, the Ninth Circuit

6

considers whether the action "imposes an obligation, denies a right, or fixes some legal

7

relationship. . . . if the order provides a 'definitive' statement of the agency's position, has a 'direct

8

and immediate' effect on the day-to-day business of the party asserting wrongdoing, and envisions

9

'immediate compliance with its terms,' the order has sufficient finality to warrant the appeal

10

offered by section [46110]."  *Crist v. Leippe,* 138 F.3d 801, 804 (9th Cir. 1998) (quoting *Mace v.*

11

*Skinner,* 34 F.3d 854, 857 (9th Cir. 1994)).  Courts also consider the existence of an administrative

12

record and factual findings in determining whether a TSA decision constitutes an "order" for

13

purposes of Section 46110.  *See Sierra Club v. Skinner,* 885 F.2d 591, 593 (9th Cir. 1989).

14

The Government first argues that the STA Redress Process constitutes a "final order"

15

within the meaning of Section 46110.  Dkt. #18 at 28.  Specifically, the Government analogizes

16

the STA Redress Process to a "Security Directive" of TSA like those in *Ibrahim* and *Gilmore,*

17

which the Ninth Circuit recognized as final orders.  *Id.* (citing *Ibrahim v. DHS*, 538 F.3d 1250,

18

1257 (9th Cir. 2008); *Gilmore*, 435 F.3d at 1133).  The Court finds this comparison ill-fitting.

19

*Ibrahim* and *Gilmore* addressed TSA directives that envisioned immediate compliance with direct

20

effects on the day-to-day business of the parties.  *Ibrahim* addressed TSA's directive implementing

21

the "No-Fly List," which "requires airlines to check passengers' identification against the No-Fly

22

List and establishes other 'policies and procedures' to be followed if they find a passenger's name

23

on the list."  *Ibrahim*, 538 F.3d at 1257.  Similarly, *Gilmore* addressed TSA's directive that airline

24

passengers present identification or be a "selectee," and that airport security personnel carry out

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS - 22

1 that policy. *Gilmore*, 435 F.3d at 1133. In the context of the security threat assessment process,

2 the set of procedures TSA follows for making a security threat assessment is clearly identified as

3 a "Security Directive." *See* Dkt. #18-2 at 6 ("Security Directive 1542-04-08K").[2]   Similarly, TSA

4 has identified the order of the TSA Final Decision Maker as a final order subject to Section 46110.

5 *See* 49 C.F.R. § 1515.11(h). In contrast to these directives, the STA Redress Process merely sets

6 forth the process for challenging TSA's security threat assessments—including options to appeal

7 to an ALJ and a TSA Final Decision Maker. *See generally* 49 C.F.R. § 1515. As such, it lacks

8 the direct and immediate effect, expectation of immediate compliance, and finality necessary to

9 comprise a final order under Section 46110.

10       Next, the Government argues that even if the STA Redress Process is not a final order,

11 Plaintiff's claims are "inescapably intertwined" with the review of a final order, thus divesting this

12 Court of jurisdiction. Dkt. #18 at 28. A district court maintains jurisdiction to hear broad

13 constitutional challenges to the Government's actions. *Mace,* 34 F.3d at 858 (9th Cir. 1994)).

14 However, it is divested of jurisdiction if such claims are "inescapably intertwined with a review of

15 the procedures and merits surrounding" a final order under Section 46110. *Id.* The Ninth Circuit

16 has determined that a plaintiff's due process constitutional challenge is "inescapably intertwined"

17 with review of an order if it "squarely attack[s] the orders issued by the TSA with respect to airport

18 security." *Gilmore*, 435 F.3d at 1133, n.9. Courts have contrasted such collateral challenges to

19 the merits of a previous agency adjudication with "facial challenge[s] to the constitutionality of

20

21

22 [2] The Complaint briefly states that TSA's consultation with TSC and/or watch lists maintained by TSC violates substantive due process. Dkt. #1 at ¶¶ 235-236. However, because Plaintiff only seeks revisions to the STA Redress Process, not TSA's process for making an initial security threat assessment

23 determination, the Court does not interpret his claims as challenging Security Directive 1542-04-08K or subsequent versions of that directive. *See id.* at 40-41, ¶¶ 7-10.

24

certain agency actions," the latter of which are not proscribed by Section 46110. *See Tur v. F.A.A.*, 104 F.3d 290, 292 (9th Cir. 1997) (Distinguishing facial challenge in *Mace* from suit directed at conduct of TSA officials in adjudicating specific claim); *see also Mace*, 34 F.3d at 858 ("Mace's claims differ from those asserted in *Green*, where it was the *conduct* of FAA officials in adjudicating a specific individual claim that was under attack") (emphasis in original) (citing *Green v. Brantley*, 981 F.2d 514 (11th Cir. 1993)).

Here, Plaintiff's only justiciable claims are prospective and challenge the legality of the STA Redress Process under the Constitution and the APA.[3]  Moreover, because TSA ultimately withdrew its Final Determination, Dkt. #1 at ¶¶ 141-144, no final order exists to be challenged. Plaintiff's claims are therefore more akin to those in *Mace*, where the plaintiff "broadly challenged the constitutionality of the FAA's revocation procedures."  *Mace*, 34 F.3d at 858.  The Ninth Circuit in *Mace* reasoned that because plaintiff only challenged the procedures, not the merits, of the FAA's order, "the administrative record . . . would have little relevance to Mace's constitutional challenges here."  Consequently, the Ninth Circuit concluded that "any examination of the constitutionality of the FAA's revocation power should logically take place in the district courts, as such an examination is neither peculiarly within the agency's 'special expertise' nor an integral part of its 'institutional competence.'"  *Id.* at 859.  Such is the case here, where Plaintiff challenges the procedures employed in seeking review of security threat assessments rather than the particular outcome of the decision.  For this reason, Section 46110 does not divest this Court of jurisdiction.  *Reno v. Catholic Social Servs., Inc.,* 113 S.Ct. 2485, 2495 (1993) (Holding that a

---

[3] Plaintiff attempted to bring claims seeking retrospective relief as to his withdrawn security threat determination, but these claims are barred on sovereign immunity grounds.  *See* Section III(C)(1), *supra*.

statutory provision governing the review of single agency actions does not apply to challenges to "a practice or procedure employed in making [numerous] decisions.").

Having resolved the Government's jurisdictional challenges, the Court will now turn to its merits challenges.

**D.  Sufficiency of Plaintiff's Claims**

Official Capacity Defendants move to dismiss Plaintiff's due process and APA claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. #18 at 30-40.  The Court will address each claim in turn.

1.  Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* at 333 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)). Due process, however, "'is flexible and calls for such procedural protections as the particular situation demands.'"  *Id.* at 334, 96 S.Ct. 893 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972)).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  A threshold requirement is the plaintiff's showing of a liberty or property interest protected by the Constitution.  *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013).  Plaintiff alleges that Official Capacity Defendants have deprived him of three liberty interests: the right to

1    hold worker identification credentials, the right to pursue his chosen profession, and the right to

2    be free from false government stigmatization.[4]   The Official Capacity Defendants contend that

3    none of these interests are cognizable under procedural due process.   For the reasons set forth

4    below, the Court finds that Plaintiff has failed to state cognizable liberty or property interests.

5                    i.        Right to Airport Badge and Identification Credentials

6            First, Plaintiff asserts that the unlawful STA Redress Process harms his protected property

7    interest in workers' identification credentials, including the SIDA badge.   Dkt. #1 at ¶¶ 163-164,

8    175-176.   "The Constitution itself creates no property interests; rather, such interests 'are created

9    and their dimensions are defined by existing rules or understandings that stem from an independent

10   source such as state law.'"   *United States v. Guillen-Cervantes*, 748 F.3d 870, 872–73 (9th Cir.

11   2014) (quoting *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005)).   Consequently, a

12   constitutionally cognizable property interest "requires more than an 'abstract need or desire' or a

13   'unilateral expectation of it'—rather, there must be a 'legitimate claim of entitlement.'"   *Id.*

14   (quoting *Town of Castle Rock,* 545 U.S. at 756).

15           The Government contends that Plaintiff cannot substantiate an "entitlement" to an airport

16   badge, particularly given the "highly sensitive" nature of granting access to secure airport areas.

17   Dkt. #18 at 31.   The Court agrees.   Plaintiff points to no existing law, rule, or understanding that

18   makes the conferral of airport worker credentials "mandatory."   Instead, he merely insists that he

19   "properly alleges his protected property interest in workers' identification credentials, such has

20   SIDA badges." Dkt. #26 at 20.   This conclusory assertion is insufficient to demonstrate that he

21   holds a constitutionally cognizable interest in airport worker credentials.   To the extent Plaintiff

22   _____

23   [4] Plaintiff also pleads a protected liberty interest in his right to freely travel.   *See* Dkt. #1 at ¶¶ 74, 143,
     168, 224-25.   However, the Court has dismissed Plaintiff's claims alleging travel-related harm for lack of
24   standing, as set forth in Section III(C)(2)(ii), *supra*.

1   relies on *Parker v. Lester* to argue that denial of a security clearance amounts to a denial of due

2   process, *Parker* addressed security clearances in the context of seamen's employment on merchant

3   vessels. *See* 227 F.2d 708 (9th Cir. 1955). Here, in contrast, Plaintiff asserts a property interest

4   over a TSA credentialing decision that grants individuals access to secure areas of airports—a

5   decision which courts have traditionally accorded broad deference to TSA. *See, e.g.*, *Olivares v.*

6   *Transportation Sec. Admin.*, 819 F.3d 454, 462 (D.C. Cir. 2016) ("Congress has entrusted TSA

7   with broad authority over civil aviation security") (internal quotations omitted).

8          Moreover, since *Parker*, courts have declined to find a liberty or property interest in a

9   security clearance. *See Department of the Navy v. Egan*, 484 U.S. 518, 528 (1988) ("It should be

10  obvious that no one has a 'right' to a security clearance."); *Dorfmont v. Brown*, 913 F.2d 1399,

11  1404 (9th Cir. 1990) *cert. denied*, 499 U.S. 905 (1991) ("There is no right to maintain a security

12  clearance, and no entitlement to continued employment at a job that requires a security

13  clearance."); *see also Jamil v. Secretary, Department of Defense*, 910 F.2d 1203, 1209 (4th Cir.

14  1990) (since no one has a "right" to security clearance, revocation thereof "does not infringe upon

15  one's property or liberty interests"). Plaintiff's Response fails to meaningfully address *Dorfmont*

16  and its related cases.

17         For these reasons, Plaintiff has failed to state a procedural due process claim with respect

18  to his interest in holding an airport badge and related identification credentials.

19                    ii.      Right to Pursue Chosen Profession

20         Next, Plaintiff claims that the STA Redress Process harms his liberty interest in pursuing

21  his chosen profession. Dkt. #1 at ¶¶ 165-166, 169, 175-177. The Supreme Court has recognized

22  "some generalized due process right to choose one's field of private employment." *Conn v.*

23  *Gabbert*, 526 U.S. 286 (1999). However, a liberty interest in pursuing one's chosen profession

24

1  has only been recognized "in cases where (1) a plaintiff challenges the rationality of government

2  regulations on entry into a particular profession, or (2) a state seeks permanently to bar an

3  individual from public employment." *Guzman v. Shewry*, 552 F.3d 941, 954 (9th Cir. 2009)

4  (internal citations omitted).   Because Plaintiff is not a public employee and the federal

5  government—not the state—implements the STA Redress Process, the Court will focus its analysis

6  on the first scenario.

7      As an initial matter, Plaintiff fails to clearly define the field and scope of his chosen

8  profession.  On one hand, his complaint claims that his "chosen field of employment" is a position

9  similar to the one he held at Delta—a Cargo Customer Service Agent—which "is contingent on

10  holding a SIDA badge and having airport privileges."  *See* Dkt. #1 at ¶¶ 144, 151.  Confusingly,

11  however, his complaint also alleges a separate and possibly broader interest in data science and/or

12  information technology.  Plaintiff is currently pursuing a PhD at the University of Washington

13  Information School with a dissertation that involves "synthesizing data," *id.* at ¶ 15, and was

14  scheduled to begin a data analyst position with Delta once he returned from Berlin.  *Id.* at ¶ 67.

15  Consistent with a career path in data analysis, Plaintiff claims he traveled to Berlin for the annual

16  conference of the Association of Internet Researchers.  *Id.* at ¶ 44.  Nothing in Plaintiff's complaint

17  indicates that the STA Redress Process, which addresses the discrete issue of Plaintiff's access to

18  secured areas of the airport, affects his ability to pursue a career in data science and/or information

19  technology.  On this basis alone, Plaintiff has failed to allege that the STA Redress Process has

20  injured his liberty interest in pursuing his chosen profession.

21      Even if the Court narrowly construes Plaintiff's chosen profession as working as a cargo

22  service agent for a commercial airline, which requires holding a SIDA badge and airport privileges,

23  courts have declined to recognize a liberty interest in pursuing employment that requires a security

24

1 clearance.  In *Dorfmont*, the Ninth Circuit reasoned that the plaintiff "ha[d] not been deprived of

2 the right to earn a living[,] she ha[d] only been denied the ability to pursue employment requiring

3 a Defense Department security clearance."  *Dorfmont*, 913 F.2d at 1403.  Consequently, the court

4 reasoned that without a "protected interest in a security clearance, there is no liberty interest in

5 employment requiring such clearance."  *Id.*   Plaintiff cites two cases from the D.C. Circuit

6 regarding the due process liberty interest in pursuing one's chosen career, *see* Dkt. #26 at 20-21,

7 yet neither of these cases address professions that require security clearances.  *See Abdelfattah v.*

8 *DHS*, 787 F.3d 524 (D.C. Cir. 2015) (software engineer); *Campbell v. District of Columbia*, 894

9 F.3d 281, 289 (D.C. Cir. 2018) (healthcare executive).  To the extent Plaintiff relies on *Greene v.*

10 *McElroy*, 360 U.S. 474 (1959), to support a due process challenge predicated on revocation of a

11 security clearance, the Ninth Circuit has held otherwise.  *See Dorfmont*, 913 F.2d at 1404

12 ("[A]lthough [*Greene*] appears superficially to allow a due process attack on a security clearance

13 decision, it in fact does not.  The Court stated explicitly that it was not deciding what procedures

14 were constitutionally compelled, but only that [the petitioner] could not be deprived of certain

15 procedures in the absence of authorization from the President or Congress.").

16 　　　For these reasons, Plaintiff has failed to allege facts that support a due process claim with

17 respect to pursuit of his chosen profession.

18 　　　　　　　　　iii.　　　Reputational Interest and Freedom from Stigmatization

19 　　　Finally, Plaintiff claims that he has suffered reputational damage as a result of Defendants'

20 policies and actions.  Dkt. #1 at ¶¶ 148-151, 179, 190, 217.  The Supreme Court has recognized a

21 constitutionally protected interest in "a person's good name, reputation, honor, or integrity."

22 *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).  As such, it has formulated a standard,

23

24

1   known as the "stigma-plus" test, to determine whether reputational harm infringes a liberty

2   interest. *Paul v. Davis,* 424 U.S. 693, 711 (1976).

3     To prevail on a claim under the stigma-plus doctrine, Plaintiff must show (1) public

4   disclosure of a stigmatizing statement by the government, the accuracy of which is contested; *plus*

5   (2) the denial of some more tangible interest such as employment, or the alteration of a right or

6   status recognized by state law." *Green v. Transportation Sec. Admin.*, 351 F. Supp. 2d 1119, 1129

7   (W.D. Wash. 2005) (emphasis added) (citing *Ulrich v. City & County of San Francisco,* 308 F.3d

8   968, 982 (9th Cir. 2002); *Paul,* 424 U.S. at 711). "The plus must be a deprivation of a liberty or

9   property interest by the state . . . that directly affects the [Plaintiff's] rights." *Id.* (quoting *Miller v.*

10  *Cal.,* 355 F.3d 1172, 1178 (9th Cir. 2004)). Under the "plus" prong, a plaintiff can show he has

11  suffered a change of legal status if he "legally [cannot] do something that [he] could otherwise

12  do." *Miller,* 355 F.3d at 1179.

13    Plaintiff contends, and Defendants do not dispute, that revocation of airport privileges

14  imputes criminal offenses or associations and carries with it a stigma that an individual is

15  dangerous and/or suspected of having ties to terrorism. Dkt. #1 at ¶¶ 171-173. Plaintiff also claims

16  that he poses no security threat to aviation and therefore sufficiently contests the accuracy of the

17  alleged stigmatization. *Id.* at ¶¶ 173-174. Nevertheless, Plaintiff's claims fall short of satisfying

18  the "plus" factor, given that he has failed to allege deprivation of a liberty or property interest to

19  which he is entitled. As discussed above, Plaintiff's SIDA badge and pursuit of a career that

20  requires airport privileges do not constitute liberty or property interests protected by the due

21  process clause. *See Dorfmont*, 913 F.2d at 1403–04.

22    Plaintiff also raises arguments related to his perceived placement in the TSDB, *see* Dkt.

23  #26 at 21-22, yet he still fails to identify any specific liberty or property interest that satisfies the

24

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS - 30

1    "plus" prong of the stigma-plus test.  Regardless of "the broad range of consequences" that *could*

2    occur if the general public knew of one's stigmatizing TSA designation or perceived designation,

3    purely speculative harms are insufficient to satisfy the "plus" requirement.  *Abdi v. Wray*, 942 F.3d

4    1019, 1033 (10th Cir. 2019) (Dismissing stigma-plus due process claim where plaintiff "failed to

5    specifically allege that he has actually been prevented from participating in any of the above

6    activities.").[5]  Accordingly, he has failed to state a claim under the stigma-plus doctrine.

7         For these reasons, Plaintiff has failed to allege deprivation of a property or liberty interest

8    through the unlawful STA Redress Process.  Because this issue is dispositive, the Court need not

9    address the remaining *Mathews* factors.

10        2.  <u>Substantive Due Process</u>

11        The Government also seeks to dismiss Plaintiff's substantive due process claims for failure

12   to state a claim.  Dkt. #18 at 38-39.  In contrast to procedural due process, substantive due process

13   "protects individual liberty against certain government actions regardless of the fairness of the

14   procedures used to implement them."  *Collins v. City of Harker Heights*, 503 U.S. 115, 125, (1992)

15   (internal citation and quotations omitted).  Substantive due process "provides heightened

16   protection against government interference with certain fundamental rights and liberty interests,"

17   which are held to a more exacting standard of strict scrutiny.  *Washington v. Glucksberg*, 521 U.S.

18   702, 719 (1997).  Rights are protected under the substantive due process clause if they are "so

19   rooted in the tradition and conscience of our people as to be ranked as fundamental" or if such

20   rights reflect "basic values implicit in the concept of ordered liberty" such that "neither liberty nor

21

22   ―――――――――――――

     [5] Plaintiff also cites to cases that address reputational interests implicated by individuals' inclusion in the
     TSDB and the dissemination of that TSDB information to other entities.  *See Elhady v. Kable*, 391 F. Supp.
23   3d 562 (E.D. Va. 2019); *Mohamed v. Holder,* No. 1:11-cv-50, 2015 U.S. Dist. LEXIS 92997 (E.D. Va. July
     16, 2015).  Because this case challenges stigmatization from revoked airport privileges caused by the
24   unlawful STA Redress Process, not from inclusion in the TSDB, these cases are inapposite.

1    justice would exist if they were sacrificed." *Id.* at 720–21 (1997); *Griswold v. Connecticut,* 381

2    U.S. 479, 500 (1965).

3           Plaintiff alleges violations of his substantive due process rights insofar as the STA Redress

4    Process unduly burdens (1) his fundamental liberty interest in traveling; (2) his liberty interest in

5    practicing his chosen profession without government restraint; (3) his property interest in his SIDA

6    badge; and (4) his liberty interest to be free of government stigmatization.  Dkt. #1 at ¶¶ 224-228.

7    As an initial matter, the Court previously determined that Plaintiff lacks standing to pursue claims

8    for travel-related injuries.  *See* Section III(C)(2)(ii), *supra*.  For that reason, the Court will focus

9    its analysis on the remaining three alleged interests.

10           Regarding (2) and (3), the Court has already determined that Plaintiff does not possess a

11    liberty or property interest in a security clearance or continued employment at a job that requires

12    a security clearance.  *See Egan*, 484 U.S. at 528 (1988); *see also Dorfmont*, 913 F.2d at 1404

13    ("There is no right to maintain a security clearance, and no entitlement to continued employment

14    at a job that requires a security clearance.").  As such, he possesses no property interest in his

15    SIDA badge or in continued employment that requires holding a SIDA badge that could provide a

16    basis for a substantive due process challenge.

17           Regarding Plaintiff's alleged liberty interest in reputation, courts in this district have

18    recognized freedom from false government stigmatization as a procedural due process right—not

19    a protected constitutional right for purposes of a substantive due process claim.  *Tarhuni v. Holder*,

20    8 F. Supp. 3d 1253, 1272 (D. Or. 2014) (citing *Paul v. Davis,* 424 U.S. 693, 712–14 (1976)).

21    Moreover, even if a liberty interest in reputation could provide the basis for a substantive due

22    process claim, this Court has already determined that Plaintiff has failed to state a claim for false

23    government stigmatization under the "stigma plus" test.

24

1   For these reasons, Plaintiff has failed to state a claim for substantive due process violations,

2   therefore warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

3        3.   <u>Administrative Procedure Act Claims</u>

4   Finally, the Government moves to dismiss Plaintiff's claims that the policies and

5   procedures related to the TSA Redress Process violate the APA.  Dkt. #18 at 39-40.  The APA

6   permits suits against the United States by "[a] person suffering legal wrong because of the agency

7   action, or adversely affected or aggrieved by agency action within the meaning of relevant statute."

8   5 U.S.C. § 702.  Under 5 U.S.C. § 706, a reviewing court must hold unlawful and set aside agency

9   regulations that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in

10  accordance with the law."  The arbitrary and capricious standard of review is typically deferential

11  to the agency and is "not to substitute its judgement for that of the agency." *Motor Vehicle Mfrs.*

12  *Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 30 (1983).

13  Here, Plaintiff brings an APA challenge against Official Capacity Defendants for violating

14  TSA's own policies with respect to Plaintiff's security threat assessment, acting outside TSA's

15  stated regulations, and for exceeding its statutory authority delegated by Congress.  Dkt. #1 at ¶¶

16  211, 247-248, 256-259.  Because this Court dismissed Plaintiff's claims related to past injuries,

17  *see* Section III(C)(1), *supra*, the Court limits its Rule 12(b)(6) analysis to those claims seeking

18  prospective relief.

19  The Court finds that Plaintiff has plausibly stated a claim that the STA Redress Process is

20  arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.  *See* 5

21  U.S.C. § 706(2)(A), (B).  The Government argues that dismissal is warranted since (1) due process

22  does not require disclosure of classified information; and (2) the Government's assessment of what

23  information may be provided to applicants is "committed to agency discretion by law" under 5

24

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS - 33

U.S.C. § 701(a)(2). Dkt. #18 at 39-40. Both arguments fail. First, an agency's regulations may violate the APA without violating due process. Circumstances that may give rise to a determination that an agency regulation is arbitrary and capricious include reliance on factors which Congress did not intend for the agency to consider, failure to consider important aspects of the problem, explanations for the rule that run counter to the evidence, or the rule is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *See State Farm*, 463 U.S. at 31. Here, Plaintiff sufficiently alleges that the STA Redress Process exceeds TSA's statutory mandate, as it allows TSA to refuse to disclose classified information to the applicant or an applicant's counsel, prevents counsel from attending the classified portion of a bifurcated hearing, and enables TSA to revoke airport credentials without a written explanation. Dkt. #1 at ¶¶ 211, 249-272. The Government's second argument, which addresses the extent to which TSA may withhold classified information from applicants pursuant to its statutory and executive authority, is a merits argument that is more appropriately resolved after development of the factual record.

**E. Dismissal of DHS, DOJ and TSC Official Capacity Defendants**

Finally, the Government moves to dismiss three Official Capacity Defendants from this case on the basis that none of Plaintiff's claims implicate these individuals: Defendant Wolf (Acting Secretary, DHS), Defendant Barr (U.S. Attorney General), and Defendant Kable (Director of the TSC). Dkt. #18 at 40-41. Plaintiff argues that he has properly alleged claims against all named defendants, given that the TSC is the entity which maintains the TSDB, and the FBI oversees the TSC. Dkt. #26 at 27.

Given the dismissal of claims as to Defendant Truong and Plaintiff's travel-related injuries, no cognizable claims remain against the Attorney General, who oversees the FBI, and the TSC

1    Director, who oversees the TSC.  Plaintiff argues that TSA's consultation of the TSDB when

2    making its security threat assessments implicates the FBI and the TSC because of the

3    "interagency" nature of this process.  Dkt. #26 at 27-28 (citing Dkt. #1 at ¶¶ 235-236).  Yet as

4    Plaintiff has clarified, the basis of this action is the STA Redress Process for challenging revocation

5    of SIDA badges and airport credentials—not DHS TRIP or other processes for challenging

6    placement on government watch lists.  *See* Dkt. #26 at 16.  Because this redress process is a

7    procedure developed and implemented by TSA, not the FBI or TSC, Plaintiff's constitutional and

8    APA challenges to the STA Redress Process do not suffice as properly pleaded claims against the

9    FBI or TSC.  Accordingly, dismissal of Defendants Barr and Kable is appropriate.

10          The Court declines to dismiss the Acting Secretary of DHS at this time, given Plaintiff's

11   claim that he oversees the TSA—the agency charged with the promulgation and implementation

12   of the STA Redress Process.

13   **F. EAJA Claims**

14          Plaintiff also seeks costs and fees in this action pursuant to the Equal Access to Justice Act

15   ("EAJA"), 28 U.S.C. § 2412.  Dkt. #1 at ¶ 289.  To the extent Defendants seek dismissal of these

16   claims as premature, *see* Dkt. #18 at 41, the Court reserves consideration of Plaintiff's EAJA

17   claims until it has jurisdiction to do so.  *See* 28 U.S.C. § 2412(d)(1)(B) (Party seeking EAJA award

18   must submit its application "within thirty days of final judgment in the action.").

19                                    **IV.    CONCLUSION**

20          For the reasons stated herein, the Court resolves Defendants' Motions to Dismiss, Dkts.

21   #17, #18, as follows:

22          (1) The Court GRANTS Defendant Truong's Motion to Dismiss, Dkt. #17, and

23   DISMISSES Plaintiff's Section 1981 claim with prejudice.

24

1      (2) The Court GRANTS IN PART and DENIES IN PART Official Capacity Defendants'

2 Motion to Dismiss, Dkt. #18.

3         a.  Claims against Official Capacity Defendants seeking monetary relief, retrospective

4             relief, and relief from injuries related to travel are DISMISSED with prejudice.

5         b.  Claims for prospective relief against Official Capacity Defendants for procedural

6             due process and substantive due process violations are DISMISSED without

7             prejudice.

8         c.  The Court DENIES Official Capacity Defendants' Motion to Dismiss claims for

9             prospective relief under the Administrative Procedure Act.

10         d.  The Court GRANTS dismissal of Defendants Barr and Kable and DENIES

11             dismissal of Defendant Wolf.

12         e.  The Court DENIES dismissal of Plaintiff's request for costs and fees under EAJA.

13      (3) The Court FURTHER ORDERS Plaintiff to file an Amended Complaint curing the

14 above-mentioned deficiencies **no later than thirty (30) days from the date of this order**.

16      DATED this 16th day of September, 2020.

19

20                   RICARDO S. MARTINEZ
                   CHIEF UNITED STATES DISTRICT JUDGE

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS - 36